United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 10, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-10938

_____

PAULA R. HORNBUCKLE,

                              Plaintiff-Appellee,

        versus

STATE FARM LLOYDS; MATT KIRKPATRICK,

                              Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

Before GARWOOD, HIGGINBOTHAM, and SMITH, Circuit Judges.

GARWOOD, Circuit Judge:

    Defendants-appellants State Farm Lloyds (State Farm) and Matt
Kirkpatrick (Kirkpatrick) appeal the district court's order
awarding attorney fees to plaintiff-appellee, Paula Hornbuckle
(Hornbuckle), after granting plaintiff's motion to remand.  We
reverse.

**Facts and Proceedings Below**

On April 24, 2000, Hornbuckle filed a claim with her insurer, State Farm, to repair foundation damage that occurred at her home. She gave the date of loss as February 1, 2000. State Farm assigned Claims Specialist Kirkpatrick to adjust the claim. Baker Brothers Rotovision, retained by State Farm to conduct plumbing tests, sent a report to State Farm on May 3, 2000, informing it that sewer line leaks existed in Hornbuckle's house, but that no pressurized supply line leaks existed. After performing a personal inspection, Kirkpatrick employed Perdue and Associates (Perdue) to perform an analysis of the cause of the damage to Hornbuckle's foundation.[1]

After hiring Perdue, State Farm sent a "reservation of rights" letter to Hornbuckle, alerting her that they were reserving their right to deny her coverage pending Perdue's report. While Hornbuckle's policy does cover foundation damage that is caused by or results from water leaks, and State Farm did in fact fix and pay for the water leaks, and the damage that they caused, in the reservation of rights letter, State Farm pointed out that Hornbuckle's policy does "not cover loss caused by . . . wear and tear, deterioration or loss caused by any quality in property that causes it to damage or destroy itself. . . . settling, cracking,

---

[1] Kirkpatrick noted that Hornbuckle reported to him that many of the cracks had existed for years, but many more had appeared after the water damage, and the pre-existing cracks were worsening.

2

bulging, shrinkage, or expansion of foundations, walls, [or] floors . . . . earthquake, landslide or earth movement."

Perdue inspected Hornbuckle's residence on July 19, 2000, and prepared an engineering report on August 18, 2000 which was then sent to State Farm. In the report, Perdue found that the foundation damage originated not from the water leaks, but from fluctuating moisture levels in the soil. A copy of this report was sent to Hornbuckle August 23, and in a letter dated September 7, 2000, State Farm delivered its decision that the foundation damage to Hornbuckle's home was not covered under her policy, and therefore it would not pay to repair the foundation damage itself.

In response, Hornbuckle's now husband Don Hipp (Hipp), identified by Hornbuckle as an engineer, but of a different type from Perdue, prepared a letter which Hornbuckle sent to State Farm September 24 raising questions about and criticizing the Perdue report. The letter was not received by State Farm until November 17. State Farm delivered the Hipp letter to Perdue for review, and Perdue responded to the points made by Hipp and determined that it did not require a change in its opinion. Kirkpatrick presented this second Perdue report to Hornbuckle on December 14, 2000. This was the last significant contact that adjuster Kirkpatrick had with Hornbuckle or her claim. She was informed that, though State Farm was not going to pay the foundation claim, if she decided to pursue the claim and obtained a report from another engineer, it would

3

take a look at it.

In January 2002, Hornbuckle retained engineer Mike Cooper (Cooper) to examine the foundation damage. He submitted a report which was forwarded by Hipp to State Farm on February 6, 2002. The Cooper report stated that the house was outside of construction tolerances and required 31 piers for repair. State Farm transferred the Cooper report to Perdue, who then re-inspected Hornbuckle's home for reevaluation purposes on March 18, 2002. Perdue concluded that the foundation problems were not due to the earlier repaired leaks, and delivered a report stating such on April 26, 2002 to State Farm, which then promptly notified Hornbuckle that its opinion remained unchanged and it still would not pay the claim. Hornbuckle then submitted to State Farm a foundation repair proposal prepared by Longhorn Foundation Repair, Inc., dated September 29, 2001, for 39 piers in the amount of $13,250.

On August 23, 2002, Hornbuckle filed suit against Kirkpatrick and State Farm in Texas state court. Her complaint alleged that State Farm breached its contract, violated the duty of good faith and fair dealing, violated the Texas Insurance Code, and violated the Texas Deceptive Trade Practices Act. It sought "[a]ctual, economic, additional, and exemplary damages" and "reasonable attorneys' fees" in unspecified amounts. Kirkpatrick and Hornbuckle are both Texas citizens, while State Farm is a citizen

4

of Illinois.

As part of the discovery process, Hornbuckle was deposed. Based upon answers provided in the deposition, on May 6, 2003, State Farm and Kirkpatrick removed the case to federal court, contending that Hornbuckle fraudulently joined Kirkpatrick to destroy diversity. On May 23, 2003, Hornbuckle filed her motion to remand and for costs and attorney fees, to which State Farm filed its response on June 13, 2003.

The district court in its August 14, 2003 order rejected State Farm's contentions, holding that "[i]n light of Plaintiff's allegations and deposition testimony, and resolving all contested issues of fact in favor of the Plaintiff, the Court cannot conclude that there is no reasonable possibility that Plaintiff can recover against Kirkpatrick in state court." The district court, noting the motion to remand's contention that "State Farm removed this case despite the numerous cases involving similar allegations against State Farm and its adjusters wherein removal has been found improper," went on to hold that, because plaintiff had "numerous factual allegations supporting her claims in both her petition and deposition and the repeated admonitions of numerous Texas federal courts in similar cases, State Farm could not have had an objectively reasonable basis for believing that Plaintiff fraudulently joined Defendant Kirkpatrick." Therefore, the court ordered State Farm to pay the $750 attorney's fees associated with

5

the removal petition.[2]  State Farm now appeals the district court's award of attorney fees, asserting that Hornbuckle's deposition testimony, combined with her inability to articulate specific factual allegations of wrongdoing on the part of Kirkpatrick, provided State Farm and Kirkpatrick with an objectively reasonable basis to remove the cause of action, and therefore the district court erred in awarding attorney fees.  We agree.

**Discussion**

*1.  Standard of Review*

Although this Court may not review a district court's remand for lack of subject matter jurisdiction,[3] we may review the district court's award of attorney fees.  *Miranti v. Lee*, 3 F.3d 925, 927-28 (5th Cir. 1993) ("Guided by . . . authorities which favor appellate review of a sanctions order (even if the remand

_____

[2]  The motion to remand asserted that removal was improper on two bases, namely that Kirkpatrick was not fraudulently joined and that, in any event, the removal was not timely.  The district court found that the removal was timely.  Hornbuckle does not question that determination, which appears to be supported by the record.  The parties proceed before us on the basis – which appears to be adequately supported by the record and constitutes the basis of the district court's rulings (including its here challenged attorneys' fees award) – that the amount in controversy and citizenship of the parties were adequately established so that if Kirkpatrick's joinder was fraudulent removal would have been proper but that otherwise it would not have been.  As noted below, we do not review the remand order, but only the award of attorney fees.

[3] "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . ." 28 U.S.C. § 1447(d).

6

order itself is not reviewable), we hold that § 1447(d) does not prohibit review by this court of the order of costs and fees."); *see also Garcia v. Amfels, Inc.*, 254 F.3d 585, 587 (5th Cir. 2001).

We review a district court's section 1447(c)[4] order for attorney fees under an abuse of discretion standard. *Garcia*, 254 F.3d at 587 (citing *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000)). While we may not review the decision to remand itself, we must, as part of our examination of the award of fees, consider the objective validity of the removing party's efforts, at the time that party attempted to remove the case. *Valdes*, 199 F.3d at 293 ("We evaluate the objective merits of removal at the time of removal, irrespective of the fact that it might ultimately be determined that removal was improper."). Fees should only be awarded if the removing defendant lacked "objectively reasonable grounds to believe the removal was legally proper." *Id.*[5]

---

[4] "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

[5] We note that with respect to an award under § 1447(c) of "costs" (at least in the sense of costs under Fed. R. Civ. P. 54(d)(1)) the remanding court's discretion is much broader, and the standard of review correspondingly narrower, than with respect to an attorney's fees award by the remanding court under § 1447(c). Even if removal is ultimately determined to have been erroneous, the latter is permissible "only if it was improper for the defendant to remove," *Miranti* at 929, and such a fee award is precluded if "the defendant had objectively reasonable grounds to believe the removal was legally proper." *Valdes* at 293. By contrast, there is "no such restriction on a court's discretion

7

## 2. *Fraudulent joinder*

As this case came to us, it is undisputed that the removal would have been proper if Kirkpatrick's joinder was fraudulent (see note 2 *supra*). It has long been settled in this circuit that this depends on "'whether there is arguably a reasonable basis for predicting that the state law might impose liability [on the resident defendant] on the facts involved,'" *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286 (5th Cir. 2001) (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176-77 (5th Cir. 1968), or "'whether there was a reasonable basis in law and fact'" for the claim against the resident defendant. *Badon*, 236 F.3d at 286 (quoting *Parks v. New York Times Co.*, 308 F.2d 474, 479 (5th Cir. 1962)). *See also, e.g., Jernigan v. Ashland Oil*, 989 F.2d 812, 816 (5th Cir. 1993); *Fields v. Pool Offshore Inc.*, 182 F.3d 353, 357 (5th Cir. 1999). Merely *pleading* a valid state law claim, or one whose validity is reasonably arguable, against the resident defendant does not mean that the joinder of the resident defendant is not fraudulent, for as we held in *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 271 (5th Cir. 1992):

"In this circuit, a removing party's claim of fraudulent

---

to award costs" (at least in the Rule 54(d)(1) sense) under § 1447(c). *Miranti* at 929. Even as to such "costs," however, discretion is not unlimited. *See W. H. Avitis v. Amoco Production Co.*, 111 F.3d 30, 32, 33 (5th Cir. 1997). Here, appellants complain on appeal only of the award of attorney's fees, not ordinary court costs.

> joinder to destroy diversity is viewed as similar to a motion for summary judgment. . . . A court is to pierce the pleadings to determine whether, under controlling state law, the non-removing party has a valid claim against the non-diverse parties."

*See also, e.g., Keating v. Shell Chemical Co.*, 610 F.2d 328, 333 (5th Cir. 1980) (to resolve fraudulent joinder claim remand appropriate to determine not by "a full dress trial on the merits" but "[b]y summary judgment or otherwise" whether local defendant was in fact within scope of employment and hence immune from tort liability under local law); *Jernigan v. Ashland Oil*, 989 F.2d at 816 (in determining propriety of fraudulent joinder based removal, "[a]s with a summary judgment motion, in determining diversity the mere assertion of 'metaphysical doubt as to the material facts' is insufficient to create an issue if there is no basis for such facts," citing *Matsushita v. Zenith Radio Corp.*, 106 S.Ct. 1348, 1356 (1986)), and 817 (as with a summary judgment proceeding "conclusory allegation" is insufficient to preclude fraudulent joinder removal).[6] In *Badon v. RJR Nabisco*, 224 F.3d 382, 393-94 (5th Cir. 2000), we again noted the propriety of employing a summary judgment type procedure to resolve fraudulent joinder claims and held that conspiracy allegations against the local

---

[6] *See also, e.g., Carriere v. Sears Roebuck*, 893 F.2d 98, 100 (5th Cir. 1990); *Burchett v. Cargill*, 48 F.3d 173, 175-76 (5th Cir. 1995); *Burden v. General Dynamics*, 60 F.3d 213, 217 & n.18 (5th Cir. 1995); *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700-01 (5th Cir. 1999); *Fields v. Pool Offshore*, 182 F.3d 353, 356-57 (5th Cir. 1999).

9

defendants were properly disregarded where unsupported by any summary judgment type evidence.

Whether an award of attorneys' fees against appellants was proper thus depends on whether they had objectively reasonable grounds to believe that there was no arguably reasonable basis to conclude that Hornbuckle's claim against Kirkpatrick was valid in fact and law.

### 3. *Hornbuckle's Deposition*

Hornbuckle's deposition was taken March 25, 2003, and signed by her April 17, 2003, when this case was still in state court. It appears that though she was asked specifically what Kirkpatrick did to warrant being personally sued, she could give no meaningful answers.

The following excerpts from Hornbuckle's deposition are illustrative of this, viz:

> "Q Okay. During any time that Mr. Kirkpatrick was working on your claim, do you have any specific issue with anything that he did that you can – that you can describe to us?
> A Not that I remember at this moment.
> Q Okay. You understand, of course, that Mr. Kirkpatrick is a defendant in this lawsuit, do you?
> A I do.
> Q Do you – could you explain specifically why you are suing him in his personal capacity?
> A You need to ask my attorney that question.
> . . .
> Q Okay. So you don't know why you're suing Mr. Kirkpatrick?
> A Because he was involved initially and he has knowledge of the situation. Again, you need to get more information from my attorney."

10

. . .

"Q   Okay.   What could Mr. Kirkpatrick have done differently in – in adjusting your claim?

A   I'm sure that Mr. Kirkpatrick was working on the guidance that he was given within State Farm, but I still believe that the upheaval in the slab or the separation was due to that water leak that ran along that line that was directly underneath where the – where the slab is separating.

I don't feel like – I felt like that Jeff – that Matt Kirkpatrick was representing me – where that was his job to represent me.  Maybe that was my perception that was incorrect, but I don't feel like he went to bat for me.  I don't feel like he – he told me that he would show my case to a panel or to a group of individuals and they would make the decision.  I don't think he went to bat for me.  I don't think he defended my case.  So I think that he could have – I felt that he should be on my side more than what he was or that he should be more objective, and I don't feel like he was objective at all.

Q  To your knowledge, is it Mr. Kirkpatrick's job to go to bat for you or to represent you?  Is he your – is he your agent?

A  At the time I thought he was to – because he was my investigator, I thought he was to be on – to take in the whole picture and to be more on neutral ground.  And no, he's not my agent.  I have not spoken with my agent.

Q   Okay.   Specifically, through the course of Mr. Kirkpatrick's relationship or connection to this case, what, if anything, should he have done differently, in your estimation?

A  I think he should have been more neutral and maybe – maybe this is my perception that was incorrect, but I thought that he was to take all the information and look at it, review it on an unbiased level, and I don't think that happened.  I think it was totally biased.

Q  And is that why you're suing him personally?

A  I think that's why – partly why his name would have been included.

Q  What would another reason be?

A  Like I said, his name was included per the instruction of my attorney, and I'm sure it's more for legal purposes that I have no knowledge – not as much knowledge of the legal jargon."[7]

---

[7] Similarly, Hornbuckle testified that, although her complaint alleged that Kirkpatrick breached the duty of good

The closest that Hornbuckle ever came to specifying anything Kirkpatrick did for which he was being sued was in her testimony that

> ". . . He sent people to me, that being Mr. Perdue and other people who came into my home, who he led me to believe or represented that were people who would work with me, be honest and who were knowledgeable in their jobs. And I have since learned that that is not the case."

However, Hornbuckle admitted she was not "aware of any specific facts" supporting the allegation that Perdue was incompetent or dishonest or wrote result oriented reports, but that this was merely "my perception." The record, however, contains no proper summary judgment type evidence that Perdue was incompetent, dishonest, biased or "result oriented," nor that any such characteristic of Perdue was or should have been known to Kirkpatrick; nor does Hornbuckle point us to anything in the record

---

faith and fair dealing by failing to reasonably investigate for "toxic mold contamination," she was not aware of the existence of toxic mold in her home, that she had not made any claim to State Farm that there was any form of toxic mold in her house, that she was not aware of any reason State Farm should be conducting a toxic mold contamination investigation of her house, that it was never "indicated to or communicated to" Kirkpatrick that there was toxic mold in the house, and that she was aware of no communication to Kirkpatrick that he could or should have relied on with respect to toxic mold in the house.

Along the same lines, as to complaints of delay, Hornbuckle was unable to identify anything other than waiting for the Perdue reports, as to which she acknowledged that "the holdup was getting it from George Perdue, not getting it from State Farm to me." Respecting complaints of non-responsiveness, she was unable to recall any instance "where you asked somebody a question and you were not given an answer."

which she contends constitutes any such evidence.[8]

## 4.  Removal and the Motion to Remand

In her motion to remand, Hornbuckle fails to bring forward any substantial evidence to support a claim against Kirkpatrick. Contrastingly, with their notice of removal and in their response to the motion to remand, appellants attach, among other things, the entire Hornbuckle deposition and other summary judgment type evidence, and assert that removal was proper because Kirkpatrick was fraudulently joined in that there was no arguably reasonable basis for predicting Hornbuckle could recover against him, and that in any event, removal was objectively reasonable.

The Texas Supreme Court has held that an insurance company employee who in the course of his employment engages in the business of insurance is a "person" whose conduct is regulated by Article 21.21 of the Texas Insurance Code and who is subject to liability thereunder for his violations thereof. *Liberty Mutual Ins. Co. v. Garrison Contractors*, 966 S.W.2d 482 (1998).[9]  However,

---

[8]  Similarly, there is no summary judgment type evidence of "bias" on the part of Kirkpatrick.

[9]  The *Liberty Mutual* court noted that "an employee who has no responsibility for the sale or servicing of insurance policies and no special insurance expertise, such as a clerical worker or janitor, does not engage in the insurance business."  996 S.W.2d at 486.  *Liberty Mutual* notes that § 2(a) of Article 21.21 defines "person" as including "adjusters."  966 S.W.2d at 484. We conclude it is reasonably arguable that a claims specialist, who is an employee of an insurance company and is acting in the course of his employment as such, is a "person" within Article 21.21.

13

we conclude that there is no reasonable possibility that Texas would allow recovery under Article 21.21 (or the Texas Deceptive Trade Practices Act (DPTA)) against an insurance company employee, who in the course of his employment engages in business of insurance, *in the absence of* evidence sufficient to sustain a finding that that employee *himself* committed a violation of Article 21.21 (or the DPTA) (and that such violation was a cause of damage or legally recognized harm to the plaintiff).

In both her motion to remand and on appeal Hornbuckle cites numerous district court orders (almost all unreported) remanding cases removed by State Farm on the theory that its instate employee co-defendant had been fraudulently joined. However, nearly all of these cases are ones in which removal was on the basis that the pleadings did not state a claim against the local defendant or in which there was no discovery and no relevant summary judgment type evidence. As noted, these cases were alluded to by the district court here in awarding attorneys' fees to Hornbuckle. However, as State Farm pointed out in its opposition to the motion for remand

> "[T]his Removal, unlike the litany of cases cited by Plaintiff in support of her Motion, is not based upon whether Plaintiff has pleaded causes of action that meet the threshold of stating a claim upon which the Courts have determined relief may theoretically be granted against a non-diverse State Farm Claim Representative, but rather upon whether Plaintiff has any *evidence* at all that would support any of her claims."

The record clearly contains no summary judgment type evidence sufficient to sustain a finding that Kirkpatrick violated Article

14

21.21 (or the DPTA) or other legal duty owed by him to Hornbuckle. Hornbuckle at no time attempted to explain to the district court the absence of such evidence and did not point to any specific evidence which it could and would produce or assert any need for further discovery or the like. At the time the motion to remand was filed nine months had elapsed since the institution of the suit. That being the case, and given that Hornbuckle's deposition was taken some three years after the alleged loss and after the suit had been on file for some seven months and strongly indicated the absence of any minimally sufficient evidence of wrongdoing on Kirkpatrick's part, we hold that appellants had objectively reasonable grounds to believe the removal was legally proper.[10]

## Conclusion

For removal purposes, a local defendant is deemed fraudulently joined not only when there is no arguably reasonable basis for predicting that the local law would recognize the cause of action pled against that defendant, but also when, as shown by piercing the pleadings in a summary judgment type procedure, there is no arguably reasonable basis for predicting that the plaintiff would produce sufficient evidence to sustain a finding necessary to

---

[10] Moreover, to postpone removal after Hornbuckle's deposition until there was further discovery would have run the considerable danger of rendering the removal untimely. It was challenged on this basis in the district court, but the court ruled that the removal was timely since it was within 30 days of State Farm's receipt of Hornbuckle's transcribed and signed deposition.

recover against that defendant. Were this not the rule, the removal rights of out-of-state defendants would largely be theoretical and practically meaningless.

We do not pass on the ultimate validity of the instant removal. We do hold, however, that appellants had objectively reasonable grounds for believing that the removal was proper in that there was no arguably reasonable possibility Hornbuckle could produce sufficient evidence to sustain a finding of actionable wrongdoing on Kirkpatrick's part. That being the case, the district court abused its discretion in awarding attorneys' fees to Hornbuckle.

The district court's award of attorneys' fees to Hornbuckle is accordingly

REVERSED.