United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 19, 2007**

Charles R. Fulbruge III
Clerk

REVISED February 22, 2007

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 06-50088

STEPHEN R. SMITH,

Plaintiff-Appellant,

versus

BCE INC. AND BCE VENTURES INC.,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

Before REAVLEY, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM[*]:

Stephen R. Smith filed suit against BCE Inc. and BCE Ventures Inc. (collectively, "BCE")

for fraud by affirmative misrepresentation, fraud by omission, and negligent misrepresentation. Smith

claims that BCE fraudulently induced him to amend a commission agreement despite knowledge of

the guarantor's unstable financial condition. Smith not only filed suit against BCE for fraud and

---

[*]Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

negligent misrepresentation, but attempted to join Excel Communications Inc. ("Excel"), a non-diverse defendant, through a breach of contract claim and request for declaratory judgment relief. During the course of the proceedings, the district court denied Smith's motion to remand and his motion for leave to amend pleadings. The district court granted summary judgment to BCE on the fraud and negligent misrepresentation claims, and we affirm its judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1989, Smith worked with Excel to develop a long-distance telephone marketing system. Through an ongoing contractual relationship, Smith received a commission on the profits earned from this system. The commission agreement also entitled Smith's heirs to any commission payments. In 1998, Teleglobe acquired Excel and maintained it as a wholly-owned subsidiary. Teleglobe's business purpose primarily involved the GlobeSystem network, a globally integrated video, internet, data, and voice network. In 2000, BCE acquired Teleglobe. When BCE purchased Teleglobe, BCE immediately invested $100 million and pledged $900 million in additional support to reassure its debts. Before the BCE acquisition, Smith served on Teleglobe's board of directors for two years.

In 2001, VarTec Telecom, Inc. ("VarTec") offered to purchase Excel. VarTec, however, did not want to assume Smith's commission agreement. William Anderson, a BCE Inc. officer and president of BCE Ventures Inc., and Smith negotiated a third amendment to his original agreement. On August 24, 2001, Smith surrendered his right to perpetual commissions in exchange for a guaranteed payment of $22 million over five years (the "Third Amendment"). The amendment designated Teleglobe Holdings (U.S.) Corporation, a subsidiary of Teleglobe Inc., as the party responsible for payments by authorizing Excel to assign its contractual obligations to Teleglobe

Holdings. Excel and Teleglobe executed a guarantee that named Teleglobe as the guarantor of Smith's payments. Upon assignment, the amended agreement released Excel from any contractual obligation to Smith and facilitated VarTec's acquisition of Excel.

After the 9/11 terrorist attacks, the telecommunications market suffered an economic downturn. Nevertheless, BCE invested $640 million of long-term funding into Teleglobe for the purpose of developing GlobeSystem, its central business project. In November 2001, BCE's board of directors approved a 2002 budget that authorized up to $850 million in additional funding for Teleglobe. On January 29, 2002, Moody's Investors Service downgraded Teleglobe's rating to its lowest investment grade level; two months later, Moody's Investors Service downgraded Teleglobe's rating to "non-investment grade" status. On April 24, 2002, BCE retracted the commitment to provide Teleglobe with long-term financial support. In May 2002, Teleglobe filed bankruptcy.

Smith filed suit against BCE for fraud, negligent misrepresentation, and promissory estoppel. He also filed suit against Excel for breach of contract. Finally, he sought a declaratory judgment against BCE and Excel. BCE removed the case from Texas state court to the Western District of Texas, alleging that Smith fraudulently joined Excel to defeat diversity. Smith moved to remand the case. The district court denied Smith's motion for remand. The district court entered a scheduling order that set January 3, 2005, as the deadline for all motions to amend or to supplement the pleadings. On May 18, 2005, Smith filed a motion for leave to file his second amended complaint. The district court denied leave to amend. BCE moved for summary judgment on Smith's pending claims. The district court denied Smith's motion for reconsideration of his motion for leave to file an amended complaint and thereafter, granted BCE's motion for summary judgment. Smith appeals the

3

district court's denial of his motion to remand and his motion for leave to amend pleadings, and the district court's grant of summary judgment.

## II.  STANDARD OF REVIEW

This court reviews de novo the district court's order to deny a plaintiff's motion to remand based on fraudulent joinder. *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 323 (5th Cir. 2001); *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir.1999).  We review the district court's denial of leave to amend pleadings for abuse of discretion.  *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003).  A district court's grant of summary judgment is reviewed de novo, applying the same legal standards as the district court.  *Machinchick v. P.B. Power, Inc.*, 398 F.3d 345, 349 (5th Cir. 2005).  If no genuine issue of material fact exists, then the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The court must view all evidence in the light most favorable to the non-movant.  *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir.), *cert. denied*, 539 U.S. 915 (2003).  If the evidence would permit a reasonable trier of fact to find for the non-moving party, then summary judgment should not be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## III.  DISCUSSION

A.

To establish fraudulent joinder, a party must demonstrate either (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.  *Griggs*, 181 F.3d at 699.  Under the second route, the court determines:

4

whether there is arguably a reasonable basis for predicting that the state law might impose liability [on the resident defendant] on the facts involved, or whether there was a reasonable basis in law and fact for the claim against the resident defendant.

*Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004) (quotation omitted and alteration in original). To merely plead "a valid state law claim" or an arguably reasonable state law claim does not automatically dissolve the issue of fraudulent joinder. *Id.* The district court should "pierce the pleadings to determine whether, under controlling state law, the non-removing party has a valid claim against the non-diverse parties." *Id.* (citing *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 271 (5th Cir. 1992).

In this case, to defeat Smith's motion to remand based on fraudulent joinder, BCE must first show that Smith cannot establish a breach of contract claim against Excel, the resident defendant. To prove breach of contract, the plaintiff must prove (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach. *Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 898 (Tex. App. 2002).

Based on the undisputed facts, Smith cannot show that Excel breached the Third Amendment. Excel assigned its payment obligation to Teleglobe. That assignment released Excel from remitting future payments to Smith. Smith knowingly consented to the amended payment terms and novation. The amendment's underlying purpose, from the beginning, was to release Excel of payment obligations in order to facilitate Excel's acquisition by VarTech. Therefore, Smith's breach of contract claim against Excel would not result in recovery.

On his claim for declaratory judgment relief, the Tex. Civ. Prac. & Rem. Code § 37.004(a) reads in pertinent part that:

5

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

In theory, Smith may seek a declaratory judgment regarding the Third Amendment, however, a declaratory judgment would not permit Smith to rescind the third amendment and hold Excel liable under the original contract. In *Sid Richardson Carbon & Gasoline Co.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996), this court reasoned that:

> Although the petition formally stated two independent causes of action for breach of contract and declaratory judgment, the latter ground is merely a theory of recovery for the former. The Texas Uniform Declaratory Judgments Act, is merely a procedural device; it does not create any substantive rights or causes of action. Consequently, we construe the request for declaratory judgment as a theory of recovery predicated upon the cause of action for breach of contract. (citations omitted).

Smith never asserted a fraud claim against Excel in this case. The only claim brought against the resident defendant alleged a breach of contract, and Smith cannot prevail on a breach of contract claim against Excel. Thus, the declaratory judgment claim constitutes only a theory of recovery. To overcome fraudulent joinder, however, the state law claim "must be reasonable, not merely theoretical." *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003) (emphasis omitted). For these reasons, the district court did not err in denying Smith's motion to remand based on fraudulent joinder.

B.

Fed. R. Civ. P. 16(b) governs the amendment of pleadings after the district court enters a scheduling order. *Sw. Bell Tel.*, 346 F.3d at 546. Rule 16(b) states that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge." The good

6

cause standard requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., L.L.C. v. South Trust Bank of Ala. NA*, 315 F.3d 533, 535 (5th Cir. 2003).

The court considers four factors to determine whether a party demonstrated good cause: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *Id.* at 536.

Smith failed to present any arguments on the four factors of good cause, but instead argued, under Fed. R. Civ. P. 15, that leave to amend should be "freely given when justice so requires." In this appeal, Smith now maintains that BCE prevented the timely request of documents, and his review extended even further past the deadline due to the manner of production. Yet Smith's motion for leave to amend, dated May 18, 2005, mentions none of these facts.

Even in light of his recent justifications, Smith fails to meet the good cause standard. Smith claims that he requested discovery on December 27, 2004, only six days before the deadline, because BCE refused discovery until the court ruled on the motion to dismiss. On December 9, 2004, the court denied BCE's motion to dismiss. According to Smith, on February 22, BCE began producing documents. By May 18, when Smith filed the motion for leave to amend, five months after the deadline, BCE's summary judgment deadline was only two weeks away. Smith's Second Amended Complaint added an array of factual allegations regarding written misrepresentations; whereas, his First Amended Complaint relies solely upon oral statements.

The "party seeking relief [must] show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W*, 315 F.3d at 535. As to the initial delay in

7

propounding a discovery request, Smith insinuates that BCE refused to even accept discovery requests. A diligent party attempts to compel discovery through the presiding court after opposing counsel unjustly refuses to provide responses. Smith argues that the information gathered from the documents formed the basis of his amendment, along with the Anderson deposition of May 11, 2005. Smith began receiving documents from BCE, however, as early as February 22. To require that BCE provide a response to his newest theory of written misrepresentations within two weeks undoubtedly would constitute unfair prejudice. Accordingly, we affirm the district court's order.

C.

To establish fraud by misrepresentation, a plaintiff must show that (1) a material representation was made; (2) it was false when made; (3) the defendant either knew it was false or made it recklessly without any knowledge of its truth; (4) the defendant made the false material representation with the intent that it should be relied upon by the plaintiff; (5) the plaintiff relied on the representation; and (6) the plaintiff suffered injury. *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004).

Under the first prong, fraud by omission can occur when there is a duty to disclose information as a matter of law. *Id.* at 859. To sustain a fraud by omission claim, the plaintiff must prove all the elements of "fraud by affirmative misrepresentation, including fraudulent intent, with the exception that the misrepresentation element can be proven by [omission] of a material fact in light of a duty to disclose." *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 567 (5th Cir. 2005) (citation omitted).

A plaintiff can also allege a negligent misrepresentation by proving that (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary

8

interest; (2) the defendant supplied "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (citing the Restatement (Second) of Torts (1977)).

In his First Amended Complaint, Smith alleges that BCE misrepresented the financial condition of Teleglobe and its financial commitment to Teleglobe's vitality as a solvent business entity. The representations offered to support his fraud claims include the negotiations with Anderson and the public disclosures of BCE's CEO at a conference of public analysts. BCE and Smith never entered into a written agreement regarding BCE's commitment to Teleglobe. In *Fluorogas*, this court held that "to show fraud based on a promise of future performance, a plaintiff must also show that the person making the promise had no intention of performing at the time he made the promise. Failure to perform a contract, however, is not evidence of a fraud." 380 F.3d at 858-59 (emphasis omitted). Both the alleged promise to provide additional financial investments and the alleged promise to complete GlobeSystem constitute oral promises of future performance, and Smith failed to prove that these statements were not true when made. To the contrary, BCE indeed invested additional funds into Teleglobe after Smith's amendment to the commission agreement. Based on the weakening financial climate at the company, and generally in the telecommunication market, BCE swallowed its loss and backed away from the business. Smith's evidence fails to support his fraud by misrepresentation claim.

Similarly under Texas law, a plaintiff cannot base a negligent misrepresentation claim on a promise of future conduct. *Clardy Mfg. Co. v. Marine Midland Bus Loans Inc.*, 88 F.3d 347, 357

9

(5th Cir. 1996). Smith fails to offer evidence that BCE supplied false information prior to execution of the Third Amendment; instead, his factual allegations relate to BCE's future financial commitment to Teleglobe. For this reason, the district court properly granted summary judgment to BCE on the negligent misrepresentation claim.

The underlying facts of *Bay Colony, Ltd. v. Trendmaker, Inc.*, 121 F.3d 998 (5th Cir. 1997), also bear a strong resemblance to an aspect of Smith's fraud by omission claim in this appeal. Bay Colony entered into a contractual relationship with Midlands, negotiated by Trendmaker, for Midlands to perform certain construction obligations on thirteen raw tracts purchased in a master-planned community. *Id.* at 1001. Trendmaker, also an investor in the planned community, promised to fully support the community to completion. *Id.* Bay Colony and Trendmaker executed no written agreements to memorialize this promise. Subsequently, the real estate market crashed and completing the planned community became an untenable venture under the existing agreements. *Id.* at 1001-02. Trendmaker eventually pulled out of the development by transferring its interest to another business entity. *Id.* at 1002. Bay Colony filed suit against Trendmaker for payments under its contract with Midlands. Bay Colony argued that, based on the past business conduct of the parties, Trendmaker had a duty to disclose its intention to withdraw from the joint venture. Further, Bay Colony continued to perform under the contract in reliance upon Trendmaker's continued participation in building the planned community. *Id.* at 1004. The court held that "[t]here was no confidential or fiduciary relationship between the parties. Bay Colony did not act on behalf of Trendmaker or Midlands, nor did it have the authority to do so. Instead, Trendmaker and Bay Colony entered into an arms-length transaction.... [t]he fact that parties have entered into a contract does not create a confidential relationship." *Id.*

10

Similar to Trendmaker's relation to Bay Colony, BCE is a third party that merely negotiated an arms-length transaction without creating an obligation to perform. When Smith requested that BCE guarantee the amended commission agreement, BCE declined this offer, and instead, Smith and BCE agreed that Teleglobe would serve as the guarantor. Similar to Trendmaker, BCE also made a business decision to pull out based on a worsening economy and weakened market. Accordingly, we find that BCE had no duty to disclose confidential information, and thus, cannot be held liable for fraud by omission.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.