In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-2203

KENNETH J. WOLF and KJW, LLC,

*Plaintiffs-Appellants,*

*v.*

FORD KENNELLY, ROSENTHAL COLLINS
GROUP, LLC and LAWRENCE SPAIN,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:07-cv-02218—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED MAY 28, 2009—DECIDED JULY 23, 2009

Before BAUER, FLAUM, and KANNE, *Circuit Judges.*

FLAUM, *Circuit Judge.*   Ford Kennelly prevailed in a
National Futures Association arbitration against several
commodities brokers with whom Kennelly had accounts
and who, he alleged, ran "boiler room" operations that
caused him to incur severe losses. Those brokers then
filed separate petitions to vacate in Illinois state court
and the Northern District of Illinois. Kennelly sought,

unsuccessfully but over a period of several months, to remove the state court case to federal court; and while he was unsuccessful in getting the case into federal court he did persuade the district court to bar KJW, LLC, one of the commodities brokers, from seeking attorneys' fees for his attempted removal. KJW now appeals that ruling.

For the following reasons, we conclude that clearly established law foreclosed Kennelly's attempts to remove the state court case to federal court and accordingly we reverse the district court's minute order barring the petition for attorneys' fees.

## I. Background

Ford Kennelly, an Indiana citizen, sued Ken Wolf, KJW (his broker), Lawrence Spain (another broker) and the Rosenthal Collins Group, LLC ("RCG") in a National Futures Association ("NFA") arbitration. The arbitration panel found in Kennelly's favor, awarding him $1.3 million in damages, with RCG and Wolf jointly and severally liable for $543,386.12, plus interest. RCG filed a petition to vacate that award in the Northern District of Illinois, posting bond in the amount of the entire joint and several award pursuant to NFA rules before doing so. According to Wolf, they also made demands on him to indemnify RCG under an agreement between RCG and KJW. Wolf was not a party to RCG's petition.

On March 25, 2007, Wolf and KJW filed their own petition to vacate in Cook County Circuit Court. Wolf included in his state court petition a count for declara-

tory relief against RCG under Illinois state law, seeking a declaration that RCG did not have a valid claim for indemnification.

Kennelly responded by seeking to remove Wolf's petition to federal court. Wolf's counsel, in a letter sent to Kennelly's counsel, warned that RCG was an Illinois citizen for purposes of jurisdiction and that 28 U.S.C. § 1441(b), the "forum defendant rule," prevented removal to federal court. Kennelly nonetheless sought to remove the case in a motion filed on April 23, 2007. To cure the removal problems presented by the forum defendant rule, Kennelly asked the district court to realign RCG as a petitioner (instead of a respondent) "according to their actual interests in the litigation." Kennelly also claimed that Wolf's declaratory judgment action against RCG was premature because, if the arbitration award were vacated, "there would be no need for a court to determine whether KJW and Wolf are legally obligated to indemnify RCG." Kennelly also expressed his concern that if the state case were not removed, there was a possibility of inconsistent decisions.

On May 21, 2007, Wolf moved to remand. Wolf argued that because RCG was a respondent, Kennelly's removal violated § 1441(b)'s forum defendant rule and that RCG had not consented to removal. Wolf also opposed realignment as the petitioner in the Illinois state court case. Wolf's motion opposing removal cited *American Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 151 (7th Cir. 1981), which holds that realignment is only proper "where there is no actual, substantial conflict between the

parties that would justify placing them on opposite sides of the lawsuit." Wolf emphasized in his motion that there was a live controversy with RCG over the issue of indemnification. Kennelly opposed the motion to remand the case back to the Illinois state court.

At a status conference on June 25, 2007, the district court appeared persuaded by Kennelly's opposition. The district court stated that "it does seem to me that the real dispute here is between the party that prevailed at the arbitration and the parties that were found by the arbitrator to have violated . . . Mr. Kennelly's rights. So with that understanding, I do think removal was proper." The district court said that it was "concerned" about Wolf's argument regarding a substantial dispute about indemnification but suggested that she saw another problem, that Kennelly had not raised in his motion to remove, regarding whether "complete justice can be done in the absence of the Wolf and KJW parties" in RCG's federal case. However, RCG indicated its intention to dismiss its federal petition and litigate in state court if the district court remanded Wolf's case. Wolf and RCG filed a supplemental brief restating that intention on July 12, 2007.

On August 14, 2007, Kennelly argued that Wolf's declaratory judgment action against RCG should be severed and that the district court should regard that part of the case as a "sham orchestrated by Wolf and RCG jointly to keep Kennelly out of federal court." The parties went through mediation without success. The district court held another hearing on September 19, 2007 in which the

court signaled once again its intention to deny the motion for remand. Two more months then elapsed. On November 27, 2007, the district court ordered Wolf to respond to the arguments Kennelly had raised in his August 14 brief regarding severance of the indemnification issue.

At some point in late November or early December 2007, it emerged that one of RCG's limited partners was an Indiana citizen. It thus now appeared that RCG could not be realigned as a petitioner because Kennelly was an Indiana citizen and placing the two on opposite sides would destroy the diversity of the suit.

On December 13, 2007, Wolf submitted another brief arguing that *American Motorists* still applied but that it did not matter whether the district court realigned RCG or not. As RCG stated, sending RCG (an Indiana resident) to the plaintiff's side against Kennelly (also an Indiana resident) would destroy diversity. Wolf also cited case law holding that mere "misjoinder" of a defendant could not cure removal defects, as the standard was the much more imposing "fraudulent joinder." Wolf pointed out that even if misjoinder standards applied, there was no pending motion to sever RCG from the case. Kennelly, in response to Wolf, made such a motion to sever on January 10, 2008.

On February 12, 2008, the district court issued a twelve-page memorandum granting the motion to remand. The district court first found that it must remand if RCG was a respondent in the case. As the district court stated, since jurisdiction did not rest on a federal question, under § 1441(b) the case was "removable only if none of the

parties in interest properly joined and served as defendants is a citizen of the state in which such action is brought." RCG was a citizen of Illinois, so this criterion was not met. The district court also found that removal was improper, assuming RCG as a respondent, because courts have interpreted the statutory language providing for removal "by the defendant or the defendants," 28 U.S.C. § 1441(a), as requiring that all defendants consent to removal. RCG was not willing to consent to removal. Next, the district court explained that RCG's realignment as a petitioner was not possible because it would destroy diversity between the parties. The district court also stated that, even if RCG was *not* a resident of Indiana, realignment would not be proper because of the substantial controversy between Wolf and RCG regarding indemnification. Finally, the district court held that severance of the indemnification dispute was not proper without a showing of fraudulent misjoinder or procedural misjoinder, neither of which Kennelly could prove. Accordingly, the district court remanded the case back to state court.

Wolf then tried to recover attorneys' fees for Kennelly's attempted removal. Wolf mailed Kennelly an offer to confer along with detailed invoices. Receiving no response from Kennelly, Wolf moved the district court for instructions to set a schedule for conferring under Local Rule 54.3(b). Kennelly cross-moved to bar Wolf from filing any motion for fees and costs.

The district court held a status conference on April 14, 2008. The district court granted Kennelly's cross-motion to bar Wolf from filing for fees and costs, stating:

Without reaching that question, I don't think—I think even if we were to view fee shifting as the norm, I think this case is exceptional. It's not one where removal was clear. Had that been—removal was clearly improper. Had that been the case, it would certainly not have taken me months to resolve the dispute that I think was an unfortunately costly one for both sides.

I am not inclined to shift fees in this case. So my instructions would be that you proceed with state court.

In a minute order following the status conference, the district court stated that: "[T]he court directs the parties to proceed with litigation in State court. Fee-shifting is not warranted in this case. Motion to bar therefore also granted."

Wolf now appeals the denial of attorneys' fees.

## II. Discussion

In general, we review a district court's decision to award attorneys' fees for abuse of discretion. *King v. Ill. State Bd. of Elections*, 410 F.3d 404, 411 (7th Cir. 2005). As the Supreme Court has pointed out, however, "[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). Our review of the legal issues underlying the claim for attorneys' fees is de novo. *See Dupuy v. Samuels*, 423 F.3d 714, 718 (7th Cir. 2005).

Wolf makes two arguments against the district court's ruling. First, he argues that the district court's ruling on the attorneys' fees issue—and here he focuses on the minute order—was too summary to assure a reviewing court that the district court in fact exercised its discretion. We disagree. While the district court's written ruling was indeed very summary, the minute order was essentially only memorialized what had occurred on the record during the earlier status hearing. In that hearing, the district court found that the present case was "not [a case] where . . . removal was clearly improper" and therefore denied fees. At the time that the district court made its ruling, it had issued a thorough opinion on the removal issue, noting both parties' positions on that issue. It also had before it both Wolf's motion for scheduling instructions and Kennelly's motion to bar fees. Kennelly's motion to bar fees cited the appropriate cases in this area (including both *Martin v. Franklin Corp.*, 546 U.S. 132 (2005) and *Lott v. Pfizer, Inc.*, 492 F.3d 789 (7th Cir. 2007)). The district court was thus aware of the proper standard for fees and appeared to use it in reaching its decision. Moreover, the district court cited reasons for its decision, including the fact that the case was "exceptional" and not one where removal was clearly improper, and the unusual amount of time it took the court to resolve the dispute. Because the district court's reasons were supported by the record, the more summary minute order does not constitute an abuse of discretion. *See Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 408 (7th Cir. 1998) (noting that we have "affirmed decisions refusing sanctions without

elaboration when the reasons for doing so are clear from the record").

Wolf's second argument is that the district court abused its discretion because clearly established law foreclosed removal in this case. We agree that at the time of Kennelly's attempted removal the forum defendant rule barred any attempt to remove the case without realigning RCG as a petitioner, and that this circuit's case law foreclosed any attempt to realign RCG.

"An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). In *Martin v. Franklin Capital*, the Supreme Court held that a district court may award attorneys' fees under § 1447(c) only where the removing party lacked an "objectively reasonable basis" for seeking removal. *Martin*, 546 U.S. at 141. *Martin* resolved a circuit split over the correct standard for such situations. *Compare Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004) ("Fees should be awarded only if the removing defendant lacked 'objectively reasonable grounds to believe that removal was legally proper.' ") *with Sirotzky v. N.Y. Stock Exch.*, 347 F.3d 985, 987 (7th Cir. 2003) ("[P]rovided removal was improper, the plaintiff is *presumptively* entitled to an award of fees.") (emphasis in original). The Supreme Court adopted the Fifth Circuit's approach and pointed out that "[i]f fee shifting were automatic, defendants might choose to exercise this right only in cases where the right to remove was obvious." *Martin*, 546 U.S. at 140. The Court noted that Congress would not have conferred a right to

remove and then discouraged its exercise in all but the obvious cases. *Id*.

The Supreme Court did not define what sorts of beliefs are "objectively reasonable" in its *Martin* opinion because the parties in that case agreed that the defendant's basis for removal was reasonable. In *Lott v. Pfizer, Inc.*, 492 F.3d 789 (7th Cir. 2007), we decided that "qualified immunity jurisprudence provides appropriate guidance for determining whether a defendant had an objectively reasonable basis for removal." *Id.* at 793. As we discussed in *Lott*, the qualified immunity doctrine assumes that state officials are aware of existing case law and holds officials liable only if they violate clearly established and particularized rights. *See id.* at 792 (citing *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). We reasoned that just as the qualified immunity doctrine attempts to protect zealous law enforcement, the removal statute encourages litigants to make liberal use of federal courts, so long as the right to remove is not abused. *Id.* at 793. We then announced the "general rule" to govern such cases:

> if, at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal, then a district court should award a plaintiff his attorneys' fees. By contrast, if clearly established law did not foreclose a defendant's basis for removal, then a district court should not award attorneys' fees.

*Id.* at 793. Wolf argues that this court's decision in *American Motorists* foreclosed Kennelly's attempts at removal. In *American Motorists* we held that "[r]ealign-

ment is proper when the court finds that no actual, substantial controversy exists between the parties on one side of the dispute and their named opponents . . ." *Am. Motorists*, 657 F.2d at 149 (citing *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63 (1941)). We stated that in determining whether realignment is proper, courts must focus on "the points of substantial antagonism, not agreement." *Id.* at 151. This held true even if the parties shared an interest in avoiding liability in the suit altogether. "[A] mere mutuality of interest in escaping liability" does not mandate realignment. *Id.* We ultimately concluded that realignment was not proper in that case because while the plaintiff insurance company and a defendant insurance company both had an interest in escaping liability for *any* claims, the dispute over their respective duties to defend was a real and substantial controversy that justified placing the parties on opposite sides of the dispute. *Id.*

We have subsequently held on the basis of *American Motorists* that it is "undoubtedly improper" to realign parties for the purpose of preserving jurisdiction if "an actual, substantial controversy exists between a party on one side of the dispute and its named opponent." *Krueger v. Cartwright*, 996 F.2d 928, 932 n.5 (7th Cir. 1993) (citing *Am. Motorists*, 657 F.2d at 149). At the time that Kennelly sought to remove KJW's suit to federal court, then, this circuit had a long-standing precedent that realignment is not proper where an "actual, substantial" controversy exists between the parties, even if the parties share an interest in avoiding liability in the suit.

Kennelly counters by alleging, as he did throughout the district court proceedings, that the indemnification dispute was a "sham" fabricated by Wolf and RCG in order to keep the case out of federal court. He alleges, among other factors, that the dispute is dubious because the parties have never produced a written indemnification agreement, RCG has never demanded payment, and the parties have been, in Kennelly's view, less than vigorous in pursuing the indemnification issue. It is true that the two parties ultimately agreed to dismiss the declaratory action, and while this may have given Kennelly *some* basis to believe, at the time he removed the case, that the indemnification dispute was not a "real" dispute, the district court's opinion on the removal issue ultimately found that the indemnification dispute was "actual" and "substantial" and the merits of that ruling are not on appeal.[1]

Moreover, we stated in *American Motorists* that "the facts which form the basis for realignment must have been in existence at the time the action was commenced." *Am. Motorists*, 657 F.2d at 149. Thus, the decision to dismiss the declaratory action at a later stage would not

---

[1] Kennelly also alleges that Wolf's Illinois state court pleadings were deficient because they failed to include a copy of the supposed indemnity agreement and because the pleadings failed to satisfy Illinois' fact-pleading requirements. Again, however, we note that the district court found that the dispute between RCG and Wolf was an "actual, substantial" controversy, and the validity of that decision or the adequacy of the pleadings is not an issue before us in an attorneys' fees petition.

justify the attempt to remove the case at the start of the litigation.

Kennelly also argues that his desired realignment was not foreclosed by law because, even assuming that the dispute between Wolf and RCG for indemnification was concrete, it was insubstantial in relation to their "ultimate interest" in the outcome of the litigation over the arbitration award. In support of this position Kennelly cites *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63 (1941), a case in which the Supreme Court held that parties should be aligned according to their "ultimate interests." In that case, the Supreme Court realigned a defendant as a plaintiff despite a million-dollar controversy between them because the million-dollar dispute was "frivolous" and the parties were "colloquially speaking, partners in the litigation." *Id.* at 74. Kennelly ignores, however, that *American Motorists* interpreted *Chase National Bank* and foreclosed his desired realignment. Specifically, *American Motorists* held that "a mere mutuality of interest in escaping liability is not of itself sufficient to justify realignment." *American Motorists*, 657 F.2d at 151 (citations omitted). Realignment is only proper where there is no actual, substantial conflict between the parties that would justify placing them on opposite sides of the suit. *Id.*

Kennelly attempts to distinguish the case but his arguments essentially amount to arguments against the *American Motorists* test. As the district court recognized, Kennelly ultimately wants this court to abandon *American Motorists* and join the majority of circuits in adopting the

"primary purpose" test, which would have allowed him to realign RCG as a petitioner. *American Motorists* is a minority view among the circuits. *See, e.g.,* 13B Charles Alan Wright, et al., *Federal Practice & Procedure* § 3607 (2007 Supp. at 417-18) (describing circuit split and noting that this circuit's decision in *American Motorists* places it in the minority of circuits which have adopted the "actual and substantial conflict" test). Whatever the merits of Kennelly's desire for this circuit to revisit the realignment test, however, during this attorneys' fee petition we are only concerned with the state of the law at the time Kennelly sought removal, when *American Motorists* governed his realignment argument.[2]

Kennelly's final argument that removal was not foreclosed by clearly established law is that when he

---

[2] Kennelly also cites this circuit's decision in *Naiditch v. Banque de Gestion Privee-SIB*, No. 92 C 5290, 1993 U.S. Dist. Lexis 14681, 1993 WL 424248 (N.D. Ill. Oct. 19, 1993), to support his belief that *American Motorists* did not foreclose realignment. The *Naiditch* court cited *American Motorists* but ultimately departed from its holding. The district court there found that an "actual and substantial" conflict between defendant and another entity rendered "insubstantial in comparison" the conflict between plaintiff and that entity. 1993 U.S. Dist. LEXIS 14681 at *5. Thus, the court realigned the entity as a plaintiff and characterized its realignment as being supported by *American Motorists*. 1993 U.S. Dist. LEXIS 14681 at *4. Apparently, *Naiditch* read *American Motors* as endorsing a "primary purpose" test, which is not its test for realignment. At any rate, as we noted in *Lott*, "[d]istrict court decisions . . . do not render the law clearly established." *Lott*, 492 F.3d at 793.

removed the case he labored under the erroneous impression that RCG was only a resident of Illinois for purposes of jurisdiction. In other words, he argues that but-for RCG's mistake regarding its citizenship he would not have removed the case at all. Kennelly's representation in this regard is plausible, because if he had known RCG was also a citizen of Indiana he would not have pursued removal under the suggested realignment. But the argument is irrelevant if, taking the facts as Kennelly saw them at the time, he did not have an objectively reasonable basis for seeking removal in the first place. Even if RCG was only an Illinois citizen, realignment still would have been foreclosed by *American Motors*.

### III. Conclusion

For the foregoing reasons, we REVERSE the district court's order barring a petition for fees and remand for proceedings in light of this opinion.