REVISED – August 5, 1999

**UNITED STATES COURT OF APPEALS
For the Fifth Circuit**

---

**No. 98-20217**

---

**GERRY M. GRIGGS,**

**Plaintiff-Appellant,**

**VERSUS**

**STATE FARM LLOYDS; LARK P. BLUM,**

**Defendants-Appellees.**

---

Appeal from the United States District Court
for the Southern District of Texas

---

July 20, 1999

Before GARWOOD, DAVIS, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Gerry M. Griggs appeals from the district court's orders dismissing defendant Lark P. Blum as fraudulently joined, granting Blum's motion for attorney fees, and granting summary judgment in favor of State Farm Lloyds as to all claims.  We affirm.

### BACKGROUND

This is an insurance dispute governed by Texas law.  Between 1986 and 1992, Griggs maintained a homeowner's insurance policy issued by State Farm Lloyds.  Griggs procured the insurance through Blum, who is an independent State Farm Lloyds' agent.  At all times relevant to this suit, that policy provided coverage in the amount of $495,640 for unscheduled personal property and $49,564 for personal property stored off premises.

Griggs is an avid collector of sports cards and other memorabilia. In December 1992, burglars entered a public storeroom leased by Griggs and absconded with valuable sports memorabilia. The locks on the storeroom were undisturbed, and Griggs did not immediately discover the burglary. Even when Griggs entered the storeroom and began to suspect that at least one box was missing, he was unsure whether it was missing or merely misplaced in another storeroom or in his home. Griggs finally became certain that some of his collection was missing on January 16, 1993, when he observed unique items from his personal collection being offered for sale by other dealers at a large trade show. While at the show, Griggs solicited the help of a Houston Police Officer and began interviewing dealers to determine where the stolen merchandise had been purchased.

That night, while Griggs was at the trade show, his house was burglarized. This time, the burglars forcibly entered through a rear door and left with a substantial portion of Griggs' collection, as well as personal effects such as jewelry, cameras, and a lap top computer.

Griggs estimates his loss from the burglaries in sports memorabilia alone to be in excess of $1.2 million, with approximately $700,000 in sports memorabilia being taken from the storeroom and approximately $516,000 in sports memorabilia being taken from his home. Griggs reported both burglaries to the police, which resulted in the conviction of at least one person. Griggs also reported both burglaries to State Farm Lloyds as

2

required by the policy.

In February 1993, State Farm Lloyds opened a claim file, Griggs gave a recorded statement concerning his losses, and State Farm Lloyds sent Griggs a letter requesting that he complete an enclosed sworn proof of loss. State Farm Lloyds claims it never received the requested proof of loss from Griggs. In March 1993, Griggs notified State Farm Lloyds that he was in the process of documenting what he knew to be stolen, as well as attempting to recover stolen memorabilia. State Farm Lloyds replied that Griggs' claim file remained open pending receipt of the required documentation of his losses.

In April 1993, Griggs again notified State Farm Lloyds that he was attempting to recover stolen property and requested their assistance in recovering property out of state. In June 1993, State Farm Lloyds responded that it encouraged but was unable to assist Griggs' efforts to recover out-of-state property, and that State Farm Lloyds could not process Griggs' claim until Griggs returned a sworn proof of loss and some documentation of his loss. The next month, in July 1993, State Farm Lloyds advised Griggs that it was closing his claim file because Griggs had not forwarded any information about his known losses. State Farm Lloyds informed Griggs that it would be happy to reopen the file when Griggs was able to provide the requested documentation.

Six months later, in January 1994, and again in March 1994, Griggs informed State Farm Lloyds that he was still trying to recover stolen property. In July 1994, one year after his claim

file was closed, Griggs advised State Farm Lloyds that he would soon be ready to provide State Farm Lloyds with information about his known losses.

In August 1994, more than nineteen months after his original loss, Griggs delivered three boxes of documentation to the State Farm Lloyds office. Griggs purported to include, among other things, a sworn proof of loss, and inventories of the stolen property with estimated values. A State Farm Lloyds employee signed for the boxes. State Farm Lloyds claims it never received the proof of loss, and Griggs was unable to produce a copy of any proof of loss during the discovery phase of this lawsuit.

The following summer, in July and August 1995, State Farm Lloyds assigned a new claims representative, who contacted Griggs about his claim. That representative again requested that Griggs provide a sworn proof of loss. Griggs claims he returned two sworn proofs of loss on the required forms. Despite State Farm Lloyds' discovery request, Griggs never produced copies of those sworn proof of loss forms until shortly before the district court granted summary judgment in favor of State Farm Lloyds. Copies of those documents are in the summary judgment record, but do not reflect any notary's seal. State Farm Lloyds claims that the sworn proof of loss forms were never received.

In September 1995, State Farm Lloyds informed Griggs that the sworn proof of loss forms were never received, and requested that he forward additional information, including completed personal property inventory forms (provided by State Farm Lloyds) and

4

supporting documentation. Griggs received the letter in October 1995, and informed State Farm Lloyds that the information was being copied by a third party.

In November 1995, Griggs and the assigned claims agent arranged to meet to discuss Griggs' documentation. The State Farm Lloyds agent missed two scheduled meetings. Later that month, another State Farm Lloyds representative sent Griggs a reservation of rights letter indicating that State Farm Lloyds had not received required and requested documentation, and that State Farm Lloyds was not waiving any rights arising from Griggs' failure to comply with policy terms requiring him to document his loss.

In December 1995, Griggs met with State Farm Lloyds representative to review the status of his claim. State Farm Lloyds explained to Griggs the documentation of items stolen and their values that was required to process his claim. In mid-December 1995, three years after the loss, Griggs provided State Farm Lloyds with an inventory of the items stolen. The inventory was not provided on the standardized forms provided by State Form for the purpose, but was instead compiled using a variety of undecipherable and inconsistent recording systems. State Farm Lloyds hired an accountant and a sports card expert to interpret the Griggs inventories. Sample pages in the summary judgment record from the approximately 1,000 page inventory do not ascribe values or cost bases to the items cryptically described. Moreover, the inventory apparently reflects all of Griggs' collection without delineating which items were stolen, which had been recovered, and

5

which were still missing. State Farm Lloyds' accountant asked for a variety of documents that would help to substantiate Griggs' claim. Griggs refused to tender all of the documents, but did give the accountant twenty boxes of personal financial records, which contained everything from receipts for dry cleaning to receipts for cards that were not being reported stolen. At some point, the accountant reduced the Griggs inventories to spreadsheet form, which revealed that the inventories contained duplicative pages and both duplicative and illegible entries. Neither State Farm Lloyds nor the experts hired for the purpose were able to document Griggs' claim for him from the materials provided.

On January 22, 1996, State Farm Lloyds sent Griggs a detailed letter by certified mail advising Griggs that he had not complied with his duties under the policy to provide a sworn proof of loss, an accurate inventory with supporting documentation, and access to all of the pertinent records and documents. The State Farm Lloyds policy provides, in relevant part:

> 3. YOUR DUTIES AFTER LOSS. In case of a loss to covered property caused by a peril insured against, you must:
>
> d. furnish a complete inventory of damaged personal property showing the quantity, description and amount of loss. Attach all bills, receipts and related documents which you have that justify the figures in the inventory.
>
> e. as often as we reasonably require:
> * * *
> (2) provide us with pertinent records and documents that we request and permit us to make copies.

f.   send to us or our agent, if we request, your signed sworn proof of loss within 91 days of our request on a standard form supplied by us.

There is no dispute about the fact that the policy is worded in such a way that the insured's compliance with each of these duties is a condition precedent to coverage.

State Farm Lloyds informed Griggs that, notwithstanding Griggs' failure to respond to requests made in February 1993, June 1993, June 1995, and November 1995 for a sworn proof of loss, State Farm Lloyds was willing to extend the deadline for filing a sworn and notarized proof of loss one final time. The letter unequivocally stated that Griggs would have ninety-one days from the date he received the certified letter to file a sworn proof of loss. State Farm Lloyds further explained why the inventories submitted to State Farm Lloyds by Griggs did not conform to policy requirements, and cautioned Griggs to include an itemized listing of the items stolen with individual values, and where possible, supporting documentation for either Griggs' cost basis or the estimated value at time of loss. Finally, State Farm Lloyds described in detail the types of documentation that it needed to review to process Griggs' claim, including copies of invoices or canceled checks reflecting the purchase of such items, and any independent evaluations or appraisals of the collection. State Farm Lloyds explained, in admirable detail, why such documentation was necessary for the processing of Griggs' sizable claim, and gratuitously permitted Griggs another ninety-one days in which to comply. A sworn proof of loss form was attached to the letter.

7

On April 9, 1996, State Farm Lloyds sent another certified letter to Griggs informing him that his sworn proof of loss and related documentation were due to be filed with State Farm Lloyds by April 23, 1996. Griggs responded on April 22 that he could not comply with the sworn proof of loss requirement because he did not have the required form. Griggs responded to the remaining provisions by providing State Farm Lloyds' with a half-page summary describing his loss and a batch of unsorted personal records. Although Griggs was able to present an exact dollar estimate of his loss, Griggs did not provide comprehensible paperwork substantiating his calculation of that loss.

On May 20, 1996, State Farm Lloyds sent Griggs another certified letter stating that Griggs' half page summary of loss, combined with the cumbersome inventories and unsorted financial records, were not adequate under the policy to satisfy Griggs' duties under the policy to document his losses. The May 20, 1996 letter provided another sworn proof of loss form for Griggs' use, but expressly reserved any rights State Farm Lloyds may have as a result of Griggs' non-compliance. One month later, on June 20, 1996, State Farm Lloyds provided Griggs with notice that it was denying his claims because Griggs failed to comply with his contractual duties to provide a sworn proof of loss, to produce an accurate and itemized inventory of the items stolen, and to permit reasonable access to records and documentation in support of his claim.

8

## PROCEDURAL HISTORY

Griggs filed this suit against State Farm Lloyds and Blum in Texas state court. Griggs amended his petition before serving either State Farm Lloyds or Blum. Shortly thereafter, Griggs served State Farm Lloyds. Blum was never served. State Farm Lloyds then timely removed the case, alleging diversity jurisdiction.

Griggs and Blum are both citizens of Texas. State Farm Lloyds is for jurisdictional purposes a citizen of Illinois. State Farm Lloyds' removal petition alleged that diversity jurisdiction was proper, notwithstanding the fact that Griggs and Blum are both Texas residents, because Blum was fraudulently joined. State Farm Lloyds thereafter moved to dismiss Blum as fraudulently joined, and Griggs joined issue by moving for remand to state court.

In October 1997, the district court held a hearing on the propriety of State Farm Lloyds' removal. In the course of that hearing, the district court entered an oral finding that Blum was fraudulently joined. The district court also invited State Farm Lloyds to file a motion seeking to recover its attorney fees to the extent they were expended defending Blum against the fraudulent claims. The district court thereafter entered orders dismissing Blum as fraudulently joined and denying Griggs' motion to remand, ordering Griggs to pay Blum's attorney fees in the amount of $4,725, and holding that diversity jurisdiction was proper. Griggs appeals from these holdings.

9

**ORDER DENYING GRIGGS' MOTION TO REMAND**

**I.**

The district court's orders dismissing Blum and denying Griggs' motion to remand to state court present questions of law, which we review de novo. *Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995). To establish that a non-diverse defendant has been fraudulently joined to defeat diversity jurisdiction, the removing party must prove that there has been outright fraud in the plaintiff's pleading of the jurisdictional facts, or that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court. *Burden*, 60 F.3d at 217; *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir. 1995). There is no dispute concerning the fact that both Griggs and Blum are Texas residents. Consequently, our sole concern is whether, as a matter of law, Griggs has alleged a valid state-law cause of action against Blum. *Burden*, 60 F.3d at 217-18; *Cavallini*, 44 F.3d at 259. Stated differently, we must determine whether there is any reasonable basis for predicting that Griggs might be able to establish Blum's liability on the pleaded claims in state court. *Burden*, 60 F.3d at 217; *Cavallini*, 44 F.3d at 262 n.13. In making this legal determination, we are obliged to resolve any contested issues of material fact, and any ambiguity or uncertainty in the controlling state law, in Griggs' favor. *Burden*, 60 F.3d at 217-18; *Cavallini*, 44 F.3d at 259.

10

Griggs' original and amended petitions name Lark Blum as a defendant, but allege no actionable facts specific to Blum. The only factual allegation even mentioning Blum merely states that "Defendants [sic], through its local agent, Lark Blum issued an insurance policy." The remainder of Griggs' pleadings refer to conduct by the "Defendants" that can in no way be attributed to Blum. Both Griggs' factual allegations and his articulation of his legal claims focus solely upon State Farm Lloyds' conduct in the processing and ultimate denial of his claim.

Griggs argues that his amended petition adequately states valid causes of action against Blum, pointing out that Texas law requires only notice pleading. *See* TEX. R. CIV. P. 45, 47. We decline Griggs' invitation to expand the concept of notice pleading this far. *See City of Alamo v. Casas*, 960 S.W.2d 240, 251-52 (Tex. App.--Corpus Christi 1997, writ denied) (The petition must at least provide sufficient factual information that the defendant is able to prepare a defense). We cannot say that Griggs' petition, which mentions Blum once in passing, then fails to state any specific actionable conduct on her part whatsoever, meets even the liberalized requirements that permit notice pleading. *Id*. at 251-52 (holding that petition failed to state a claim based upon factual insufficiency). Moreover, we note that notwithstanding Blum's identity as a defendant, Griggs did not make any attempt to serve Blum with either the original or the amended petition. In the district court, Griggs' counsel initially represented that

11

there had been some difficulty achieving service of process, but later abandoned that assertion when State Farm Lloyds produced evidence that Blum had been in the same business location for twelve years and that Griggs had been to that location on several occasions. We conclude that Griggs' pleadings, standing alone, do not set forth actionable claims against Blum. Moreover, the record does not support any inference that Griggs intended to actively pursue claims against Blum.

## III.

Griggs argues that the Court may consider, in addition to his petition, his affidavit testimony, which was filed with the district court before the district court's ruling on the motion to remand. State Farm Lloyds maintains that post-removal evidence may not be considered when determining whether removal was proper. Griggs has the better end of this argument, but only to the extent that the factual allegations in his affidavit clarify or amplify the claims actually alleged in the amended petition that was controlling when the suit was dismissed.

Our Court has endorsed a summary judgment-like procedure for reviewing fraudulent joinder claims. Thus, "[w]hile we have frequently cautioned the district courts against pretrying a case to determine removal jurisdiction," a federal court may consider "summary judgment-type evidence such as affidavits and deposition testimony" when reviewing a fraudulent joinder claim. *Cavallini*, 44 F.3d at 263. Post-removal filings may not be considered, however, when or to the extent that they present new causes of

12

action or theories not raised in the controlling petition filed in state court.  *Cavallini*, 44 F.3d at 263.  With that rule in mind, we will consider Griggs' affidavit, to the extent material, for purposes of determining whether there is any reasonable basis for predicting that Griggs might be able to establish Blum's liability on the pleaded claims in state court.  *See **Burden***, 60 F.3d at 217; *Cavallini*, 44 F.3d at 262.

Griggs' affidavit adds to his petition in two ways.  First, Griggs alleges that Blum made the sort of pre-purchase assurances to be expected from an insurance agent.  For example, Blum is alleged to have said that State Farm Lloyds would provide timely and professional service, and that she, Blum, would personally handle any questions or problems that might arise.  Although none of these facts appear in his state court petition, Griggs also alleged that Blum made certain representations concerning the claim at issue in this case.  Specifically, Griggs alleged that Blum promised to follow up on his claim, promised to get a competent adjustor assigned to the file, represented that the delay attendant to his independent efforts to retrieve his collection would not prejudice the processing of his claim, represented that State Farm Lloyds "had everything" they needed to process his claim, and represented that his claims would be paid quickly.

Having defined the universe of factual allegations that may be considered, we assess whether there is a reasonable basis for predicting that Griggs would be able to establish Blum's liability on the state-law theories pleaded in his amended petition.

13

# IV.

Griggs' original and amended state court petitions allege breach of the insurance contract, breach of the common law duty of good faith and fair dealing, and violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act. Neither Griggs' pleadings nor his affidavit allege that Blum was a party to any implied or express contract of any sort with Griggs. Moreover, it is undisputed that Blum had no claims processing responsibility and no decision-making authority with respect to the processing of Griggs' claim or with respect to State Farm Lloyds' ultimate denial of Griggs' claim. There is, therefore, no basis for Griggs' claim alleging that Blum breached the insurance contract.

Griggs next claims that Blum can be held liable for breach of the duty of good faith and fair dealing. "[I]n an insurance context, the duty of good faith and fair dealing arises only when there is a contract giving rise to a 'special relationship.'" *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 698 (Tex. 1994); *see also Cavallini*, 44 F.3d at 262 (under Texas law, "the existence of a contract, giving rise to a special relationship, is a necessary element of the duty of good faith and fair dealing" (internal quotations omitted)); *Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566 (Tex. 1990) (the duty of good faith and fair dealing arises "from an obligation imposed in law as a result of a special relationship between the parties governed or created by a contract" (internal quotations omitted)); *Coffman v. Scott Wetzel Servs.,*

14

*Inc.*, 908 S.W.2d 516, 516 (Tex. App.-Fort Worth 1995, no writ) (citing **Natividad** for the proposition that no duty of good faith and fair dealing is owed by an agent to the insured absent privity of contract). Once again, Griggs has not alleged that his relationship with Blum was "governed or created by" any contract, or that his relationship with Blum was otherwise imbued with special characteristics that would give rise to the "special relationship" required to impose a duty of good faith and fair dealing. *See* **Cavallini**, 44 F.3d at 261-62; **Viles**, 788 S.W.2d at 567. There is, therefore, no basis under Texas law for Griggs' claim against Blum for breach of the duty of good faith and fair dealing.

Griggs also maintains that he has alleged viable claims against Blum under article 21.21 § 16(a) of the Texas Insurance Code and § 17.50(a)(4) of the Texas Deceptive Trade Practices Act. Article 21.21 § 4 of the Texas Insurance Code provides an extensive list of acts or practices forbidden as unfair or deceptive in the business of insurance. TEX. INS. CODE ANN. art. 21.21 § 4 (Vernon Supp. 1999). Section 17.46 of the Texas Deceptive Trade Practices Act provides an extensive list of acts or practices that are forbidden in all businesses as unfair or deceptive. TEX. BUS. & COM. CODE ANN. § 17.46 (Vernon Supp. 1999). Both the Texas Insurance Code and the Texas Deceptive Trade Practices Act permit a private cause of action against "any person" who commits one of the prohibited acts or practices. *See* TEX. INS. CODE ANN. article 21.21 § 16 (Vernon Supp. 1999); TEX. BUS. & COM. CODE ANN. § 17.50 (Vernon

15

Supp. 1999). Texas courts have recently recognized that the statutory language is broad enough to permit in the appropriate circumstances a cause of action against an insurance agent who engages in unfair or deceptive acts or practices. In the two most prominent cases, *Liberty Mutual Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482 (Tex. 1998) and *State Farm Fire & Casualty Co. v. Gros*, 818 S.W.2d 908 (Tex. App.--Austin 1991, no writ), Texas courts acknowledged that a sales agent may be individually liable when the agent misrepresents specific policy terms prior to a loss, and the insured's reliance upon that misrepresentation actually causes the insured to incur damages. *See Garrison*, 966 S.W.2d 482 (agent misrepresented the amount of premium due under the policy); *Gros*, 818 S.W.2d 908 (agent misrepresented that damage to home from mudslide was covered under homeowner's policy).

Griggs argues that the mere possibility that such a claim can be stated requires the conclusion that he has stated a valid claim in this case. We disagree. While the burden of demonstrating fraudulent joinder is a heavy one, we have never held that a particular plaintiff might possibly establish liability by the mere hypothetical possibility that such an action could exist. To the contrary, whether the plaintiff has stated a valid state law cause of action depends upon and is tied to the factual fit between the plaintiffs' allegations and the pleaded theory of recovery. *See Burden*, 60 F.3d at 218-221; *see also Casas*, 960 S.W.2d at 251-52.

No facts warranting liability exist here. As an initial matter, we note that Blum's pre-purchase statements that State Farm

16

Lloyds would handle Griggs' claims professionally, as well as her post-claim assurances that she would monitor the progress of Griggs' claim, are more in the nature of non-actionable puffery than actionable representations of specific material fact. *See* ***Hedley Feedlot, Inc. v. Weatherly Trust***, 855 S.W.2d 826, 838 (Tex. App.-Amarillo 1993, writ denied) (discussing puffery defense to misrepresentation claim). The record contains ample evidence that Griggs is both a well educated gentleman and an unusually sophisticated insured. Griggs has filed a large number of claims that have been processed, according to State Farm Lloyds' procedures, by the insurance company itself. Moreover, Griggs has documented extensive and specific communication about the status and progress of his claim with the State Farm Lloyds personnel with the authority and responsibility for processing his claim. Griggs' own evidence establishes that State Farm Lloyds repeatedly forwarded certified letters return receipt requested notifying Griggs that they needed additional documentation, and that the company was reserving its rights under the policy. Thus, Griggs was made expressly aware in specific terms of the insurance company's position by the very personnel responsible for processing his claim and reaching a decision. When compared to this documentation, Blum's general, undocumented and non-specific statements clearly fall short of the mark of actionable representations under Texas law.

In addition, both the Insurance Code and the Deceptive Trade Practices Act require proof that the defendant's conduct was the

17

cause in fact of actual damages. ***Provident Am. Ins. Co. v. Castaneda***, 988 S.W.2d 189, 192 (Tex. 1998) (Insurance Code); ***2 Fat Guys Inv., Inc. v. Klaver***, 928 S.W.2d 268, 272 (Tex. App.--San Antonio 1996, no writ). Griggs claims to have been injured by State Farm Lloyds' failure to pay his claim. This is not a case like ***Garrison*** or ***Gros***, in which the plaintiff identifies a particular representation which is causally connected to the damages sustained. Griggs' Insurance Code and Deceptive Trade Practices Act claims fail because there is no conceivable basis in law or fact upon which Blum's non-specific statements can be construed as actionable representations that caused the injury alleged by Griggs.

For the foregoing reasons, there is no basis in Texas law or in fact for Griggs' claims against Blum. The district court did not err in denying Griggs' motion to remand.

### ORDER AWARDING ATTORNEY FEES

The district court awarded State Farm Lloyds the attorney fees incurred defending Blum against the fraudulent claims. The district court held that Griggs' continued pursuit of his plainly meritless claims against Blum in federal court after removal was sanctionable conduct under Federal Rule of Civil Procedure 11. Griggs challenges this decision on appeal, essentially arguing that the award of fees was improper because Blum was not fraudulently joined.

The district court's decision that sanctions in the form of attorney fees was appropriate is reviewed for an abuse of

18

discretion only.  ***Cooter & Gell v. Hartmax Corp.***, 110 S. Ct. 2447, 2461 (1990); ***Thornton v. General Motors Corp.***, 136 F.3d 450, 454 (5th Cir. 1998).  In light of our agreement with the district court that Blum was fraudulently joined, the record of the proceedings below, and the deferential standard governing our review of this issue, we are unable to conclude that the district court abused its discretion by awarding attorney fees in this case.  The district court's order granting Blum's motion for attorney fees is affirmed.

**ORDER GRANTING STATE FARM LLOYDS' MOTION FOR SUMMARY JUDGMENT**

Griggs maintains that the district court erred by granting summary judgment in favor of State Farm Lloyds because there are genuine issues of material fact about whether he complied with conditions precedent to coverage and whether State Farm Lloyds had a good faith basis for denying his claim.  State Farm Lloyds responds that the summary judgment record is adequate to demonstrate its policy defense and its good faith as a matter of law.

We have reviewed the extensive summary judgment record, including the numerous exhibits submitted by Griggs, and find no error in the district court's disposition.  We agree with Griggs that there is a genuine factual dispute concerning whether Griggs submitted a sworn proof of loss.  But no reasonable trier of fact could find that Griggs documented his losses as required by conditions precedent in the applicable insurance policy.  Absent Griggs' compliance with this independently sufficient condition precedent to coverage, State Farm Lloyds had no duty to provide

19

benefits under the contract. Likewise, no reasonable trier of fact could find that State Farm Lloyds' handling of Griggs' claim was characterized by bad faith. State Farm Lloyds repeatedly extended, with reservation of rights, its own deadlines for Griggs' compliance. Indeed, Griggs is still unable to provide comprehensible documentation of his loss. The district court closely supervised discovery in this case, ordering State Farm Lloyds to provide an itemized list of the required documentation and ordering Griggs to produce some reasonably comprehensible proof of his loss. Even at that late date, State Farm Lloyds indicated some willingness, at the district court's urging, to consider Griggs' claim if properly documented. Notwithstanding further meetings between the parties, and the personal examination of the available documentation by the district court at a hearing in which Griggs' counsel was permitted to explain the documentation, no one, including Griggs' own lawyer, was able to explain how any particular page in the thousands of pages tendered by Griggs proved any aspect of his claimed loss.

State Farm Lloyds is not liable as a matter of law on Griggs' claims under Texas common law, the Texas Insurance Code or the Texas Deceptive Trade Practices Act. The district court's grant of summary judgment in favor of State Farm Lloyds is in all respects affirmed.

### CONCLUSION

For the foregoing reasons, the district court is in all respects AFFIRMED.

20