# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 28, 2013

Lyle W. Cayce
Clerk

No. 12-20182

OVE WILLIAM AKERBLOM,

Plaintiff - Appellant

v.

EZRA HOLDINGS LIMITED; EZRA ENERGY SERVICES PTE LIMITED; EMAS OFFSHORE LIMITED; EMAS SUBSEA SERVICES, L.L.C.; LEE CHYE TEK LIONEL,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-694

Before BARKSDALE, DENNIS, and GRAVES, Circuit Judges.

PER CURIAM[*]:

Ove William Akerblom contests the district court's dismissing, on the following grounds, his action against Defendants: Emas Subsea Services, L.L.C., for failure to state a claim; Ezra Holdings Limited, Ezra Energy Services PTE Limited, and Emas Offshore Limited, for lack of personal jurisdiction; and Lee Chye Tek Lionel, for *forum non conveniens.* Primarily at issue is the court's

---

[*] Pursuant to 5th CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th CIR. R. 47.5.4.

denying Akerblom's motion to remand, pursuant to its ruling Subsea was improperly joined.  Other issues include the denial of his motions to amend his complaint and to conduct additional personal-jurisdiction discovery against Holdings, Energy, and Offshore.  Essentially for the reasons stated in the district court's three extremely detailed and comprehensive opinions, discussed *infra*, the judgment is AFFIRMED.

## I.

Akerblom, a Texas citizen, is the former majority shareholder and president of Intrepid Global Pte. Ltd.  Lee, a citizen of Singapore, is managing director of Holdings.  Lee maintains a residence in Texas and resides there occasionally.

Energy and Offshore are subsidiaries of Holdings.  Holdings, Energy, and Offshore are foreign corporations with principal places of business in Singapore.  None maintain Texas offices, are registered to do business in Texas, provide goods or services in Texas or its territorial waters, or pay Texas taxes.  Subsea, a Delaware corporation, with its principal place of business in Houston, Texas, is a subsidiary of Energy.

The following facts are taken primarily from Akerblom's state-court petition and post-removal, federal-court amended complaint (pleadings).  In July 2009, Lee approached Akerblom, regarding Holdings' acquiring Intrepid.  Akerblom rejected a verbal and subsequent written offer, but Lee and Holdings' chief financial officer (CFO) continued to pursue acquisition of Intrepid.  In October 2009, Lee proposed Akerblom sell 90 percent of his Intrepid stock (with his retaining the remaining 10 percent) in exchange for:  Holdings stock and cash; and a salaried, five-year employment contract with Intrepid/Subsea (the companies were to be integrated).  Lee also promised Intrepid would be capitalized as necessary, and projected not only that Intrepid would realize nearly $300 million in revenue growth, but also that Akerblom's retained

No. 12-20182

Intrepid stock would generate $22 million in annual profit over a five-year period. Despite other potential acquirers of Intrepid, Akerblom agreed to these terms. (In response to the court's requiring supplemental briefing for, and in support of, Lee's motion to dismiss for *forum non conveniens*, discussed *infra*, Lee provided as exhibits three contracts signed by Akerblom in Singapore, all of which included Singaporean choice-of-law and venue clauses, stating the terms of Akerblom's employment and the stock swap. At the time these contracts were signed, Defendants allege Akerblom was residing in Singapore; he does not dispute that allegation.)

For 18 months thereafter, Akerblom and Intrepid employees supported Holdings' subsidiaries, but Akerblom's and Lee's relationship deteriorated. Akerblom identified, and recommended, various business opportunities for Intrepid, including expansion into West Africa; but, Lee declined them all, causing Intrepid's $400 million revenue loss. In Spring 2010, Holdings began diverting business from Intrepid to Subsea (integration was apparently incomplete). Soon after, Lee stated Akerblom would be the principal for global marine construction, yet stated later he would be only the operations manager. (It is unclear from Akerblom's pleadings whether he would hold this position for Intrepid, Subsea, or the joint venture once integration was completed.)

Dissatisfied, and seeking to unwind the transaction, Akerblom made clear his desire to part ways with Holdings and Lee. During late 2010, Lee pressured Akerblom to repurchase his Intrepid stock for $650,000 and return his Holdings shares, threatening his financial ruin if he refused; Holdings' general counsel later echoed that threat. Lee also caused the termination of Akerblom's service agreement with Intrepid, caused a Holdings subsidiary to breach a contract with a separate company owned by Akerblom, and directed Holdings personnel to fire Akerblom from that separate company. (Holdings' relationship with this separate company is unclear.) Finally, Lee threatened to initiate legal

No. 12-20182

proceedings against Akerblom in Singapore and prevent Akerblom's defending them, by causing his visa to be revoked.

In January 2011, Akerblom sued Defendants in Texas state court, asserting myriad contract and tort claims. In response, Defendants removed this action under 28 U.S.C. § 1441, invoking alienage jurisdiction under 28 U.S.C. § 1332(a)(2); Subsea moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim; Holdings, Energy, and Offshore moved to dismiss, *inter alia*, for lack of personal jurisdiction; and Lee moved to dismiss for *forum non conveniens*.

In reply to Defendants' papers, Akerblom:  amended his state-court petition (complaint), pursuant to Federal Rule of Civil Procedure 15(a)(1) (one amendment without leave of court); and moved to remand, contending Subsea's being a defendant divested the district court of removal (28 U.S.C. § 1441(b)(2)) and subject matter (28 U.S.C. § 1332(a)(2)) jurisdiction. He supplemented that motion with an affidavit, which presented additional facts supporting his claims.

In opposition to the remand motion, Defendants invoked improper joinder. In support, they asserted Akerblom included Subsea as a defendant only in an attempt to keep this action in state court.

In the above-referenced, three extremely detailed and comprehensive opinions, the district court ruled in favor of Defendants, as follows. In July 2011, the court ruled Subsea improperly joined and, therefore, denied Akerblom's motion to remand. *Akerblom v. Ezra Holdings, Ltd.*, No. 4:11-CV-00694 (S.D. Tex. 19 July 2011).  Following oral argument in December 2011, the court in January 2012:  granted Subsea's Rule 12(b)(6) motion, and denied Akerblom's motion to amend his complaint a second time; and granted Holdings', Energy's, and Offshore's motion to dismiss, based on lack of personal jurisdiction, and denied Akerblom's request for additional personal-jurisdiction discovery. *Akerblom v. Ezra Holdings, Ltd.*, No. 4:11-CV-00694 (S.D. Tex. 25 Jan. 2012).

No. 12-20182

At the hearing in December 2011, the court also heard argument on Lee's *forum non conveniens* motion, but postponed ruling on it, pending receipt of the above-described, then-ordered supplemental briefing on Singapore's being an alternative and adequate forum. In February 2012, following such briefing, the court:  granted Lee's motion to dismiss for *forum non conveniens*, *Akerblom v. Ezra Holdings, Ltd.*, No. 4:11-CV-00694 (S.D. Tex. 13 Feb. 2012); and, that same day, entered final judgment.

## II.

Akerblom contends the district court erred by:  (1) ruling Subsea improperly joined and, as a result, denying his remand motion; (2) granting Subsea's Rule 12(b)(6) motion for failure to state a claim, and denying, on futility grounds, his motion to again amend his complaint; (3) dismissing his claims against Holdings, Offshore, and Energy for lack of personal jurisdiction, after finding them outside Texas' general jurisdiction and denying him additional discovery on that point; and (4) dismissing his claims against Lee for *forum non conveniens*, after ruling, *inter alia*, Singapore is an alternative and adequate forum (as discussed *infra*, the court retained authority to reassert jurisdiction over Lee).

## A.

For his claims against Subsea, Akerblom contends the jointly-pled claims in his state-court petition and federal-court amended complaint alleged sufficient facts to survive both an improper-joinder defense against remand and a Rule 12(b)(6) motion. With respect to the former, he asserts the district court erred by not "piercing the pleadings" to determine whether he stated a claim against Subsea. Despite, after removal, Subsea's moving to dismiss under Rule 12(b)(6), and Akerblom's having then amended his complaint under Rule 15(a)(1) without needing leave of court, Akerblom contends also the district court erred by denying him leave to amend his complaint a second time.

5

No. 12-20182

Defendants counter: Subsea was joined solely to defeat removal; and, for Subsea, because of the analytical similarities between improper-joinder and Rule 12(b)(6) doctrines, the improper-joinder ruling's being proper, summary affirmance of the Rule 12(b)(6) ruling is mandated. Relatedly, because Akerblom's pleadings had been subjected to an improper-joinder analysis, Defendants contend Akerblom's motion to amend was properly denied as futile.

### 1.

"When federal-court jurisdiction is predicated on the parties' diversity of citizenship [here, under 28 U.S.C. § 1332(a)(2)], removal is permissible only if none of the parties in interest *properly joined* and served as defendants is a citizen of the State in which [the] action [was] brought." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83-84 (2005) (quoting 28 U.S.C. § 1441(b)) (internal quotation marks omitted; emphasis added; some alterations in original). Restated, the improper joinder of a non-diverse or in-state defendant cannot defeat removal jurisdiction. *Salazar v. Allstate Texas Lloyd's, Inc.*, 455 F.3d 571, 574 (5th Cir. 2006).

Denials of motions to remand for lack of subject-matter jurisdiction, pursuant to improper-joinder rulings, are reviewed *de novo. E.g.*, *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 (5th Cir. 2005). In reviewing an improper-joinder ruling – a question of subject-matter jurisdiction, which necessitates examining plaintiff's state-court complaint – our court "must apply [state] law as interpreted by [ ] state courts". *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000); *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 312 (5th Cir. 2005) (evaluating plaintiffs' claims under Louisiana law to determine propriety of remand denial). The removing party bears a heavy burden to establish improper joinder, with doubts resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

No. 12-20182

Improper joinder exists when a plaintiff cannot establish a claim in state court against a defendant whose presence in the action will defeat diversity or removal jurisdiction. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).

> [T]he test for [improper] joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

*Id.* (rejecting any other phrasing of this rule).

To determine such possibility of state-court recovery, a court may: analyze the sufficiency of a plaintiff's pleadings alone; or, in its discretion, "pierce the pleadings and conduct a summary inquiry". *Id.* The focus is on plaintiff's pleadings at the time of removal, *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995); post-removal filings may be considered only to the extent they amplify or clarify facts alleged in the state-court complaint, with new claims or theories of recovery disregarded. *E.g.*, *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999) (affidavit considered only to extent consistent with claims or theories in state-court complaint); *Asociacion Nacional de Pescadores v. Dow Quimica*, 988 F.2d 559, 565 (5th Cir. 1993) (affidavit considered only to clarify pre-removal, jurisdictional facts); *cf. Cavallini*, 44 F.3d at 263-65 (affidavit and amended complaint not considered when state-court complaint itself contained no viable cause of action).

**a.**

Accordingly, for determining improper joinder *vel non*, Akerblom's Texas state-court petition (complaint) is the primary document considered.  A Texas state-court petition must "consist of a statement in plain and concise language of the . . . cause of action . . . . [L]egal conclusion[s] shall not be grounds for

No. 12-20182

objection when fair notice to the opponent is given". TEX. R. CIV. P. 45(a) & (b). "Under [this 'fair notice'] standard, a petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim." *Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App. 2007) (internal quotation marks and citation omitted).

In his state-court petition, Akerblom asserted against Subsea:  breach of contract; common-law fraud; statutory fraud under Texas Business and Commerce Code § 27.01; breach of fiduciary duty; intentional infliction of emotional distress; and civil conspiracy.   In his post-removal, amended complaint, Akerblom asserts against Subsea the following additional claims and theories:  shareholder oppression; intentional interference with contract; and joint-enterprise/alter-ego liability.

Some claims are easily dispensed with:  Akerblom abandoned his breach-of-fiduciary-duty claim by failing to re-assert it against Subsea in his amended complaint, *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985); and the shareholder-oppression and intentional-interference-with-contract claims, as well as the joint-enterprise and alter-ego theories of liability, all raised for the first time after removal, are disregarded, *Griggs*, 181 F.3d at 700.

Others fail as a matter of Texas contract or tort law.  Regarding the breach-of-contract claim, Akerblom at oral argument here conceded Subsea was not a party to the contracts.  Therefore, Subsea assumed no contractual duties that it could breach.  This defect, incapable of cure, is fatal to Akerblom's breach-of-contract claim. *Koenning v. Manco Corp.*, 521 S.W.2d 691, 695 (Tex. App. 1975) (petition defective when failing to allege contractual relationship).

Regarding the intentional-infliction-of-emotional-distress claim, the gravamen of Akerblom's claims sound in contract and fraud; accordingly, he cannot state an emotional-distress claim. *E.g.*, *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (availability of alternate remedies forecloses

emotional-distress claim); *Draker v. Schreiber*, 271 S.W.3d 318, 322 (Tex. App. 2008) ("[I]f the gravamen of a plaintiff's complaint is another tort, a claim for intentional infliction of emotional distress [ ] will not lie . . . even [if plaintiff] makes the alternate claim".); *Louis v. Mobil Chem. Co.*, 254 S.W.3d 602, 610 (Tex. App. 2008) (existence of statutory remedies precludes emotional-distress claim).

Thus, Akerblom's motion to remand may be granted only if the common-law and statutory fraud and civil-conspiracy claims provide a reasonable basis to predict his state-court recovery against Subsea. Because a civil conspiracy must be predicated on a separate, underlying tort, *Fisher v. Yates*, 953 S.W.2d 370, 381 (Tex. App. 1997), the fraud claims, which are comprised of essentially identical elements, *Brush v. Reata Oil & Gas Corp.*, 984 S.W.2d 720, 726 (Tex. App. 1998), are necessarily considered first.

To plead a claim for fraud, a plaintiff must allege facts showing: "a material [ ]representation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury". *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (internal quotation marks and citation omitted). "A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing *at the time it was made.*" *Id.* at 48 (emphasis added).

For his fraud claim in his state-court petition, Akerblom alleges: Lee and Holdings made representations to Akerblom, which induced him to sell Intrepid pursuant to the agreed-upon terms; he was introduced to Subsea's associate director shortly after concluding the sale agreements in Singapore; and Intrepid's business and employees were later diverted to Subsea. In his federal-court amended complaint, Akerblom retains these allegations, but clarifies his

state-court petition by attributing the representations to Subsea specifically. These representations, Akerblom contends, induced his selling Intrepid and resulted in his suffering economic and reputational injuries. As discussed above, Akerblom supplemented his motion to remand with an affidavit, in which he attempted to clarify the factual basis for his claims.

Akerblom's state-court petition and federal-court amended complaint allege that Lee and Holdings' CFO, and apparently no other person or entity, engaged in pre-agreement negotiations with Akerblom; presumably, the misrepresentations on which Akerblom stakes his fraud claim occurred as part of these negotiations. Assuming *arguendo* that Akerblom's attributing these misrepresentations to Subsea in his amended complaint seeks only to "clarify" or "amplify" his state-court petition, his allegations of Subsea's fraud are nonetheless patently defective. Devoid of substance, Akerblom's pleadings fail to give Subsea "fair and adequate notice" of the two most basic elements of the fraud asserted against it: the misrepresentation which induced his selling Intrepid, and the identity of the Subsea officer who made it. (Again, Akerblom cannot impute Lee's representations to Subsea, a separate legal entity; such imputation would depend upon an alter-ego or joint-enterprise theory, neither of which was asserted in his state-court petition.) Absent these essentials, Subsea cannot determine "what evidence might be relevant" in order to "prepare a defense". *Stafford*, 231 S.W.3d at 535.

These insufficiencies notwithstanding, Akerblom advances, at base, a fraudulent-inducement claim. Casting further doubt on a predictable basis for his recovery in Texas court, Akerblom must ultimately prove that, *at the time* those representations were made, Subsea never intended to perform. *Formosa Plastics*, 960 S.W.2d at 48. Moreover, some of the representations on which Akerblom relied were subsumed in the contract and partially performed: the stock swap occurred as proposed, as did Akerblom's agreed-upon employment

terms until late 2010. Some that were not performed, such as Lee's demoting Akerblom, are actionable in contract, *id.* ("failure to perform a contract is not evidence of fraud"), while others, such as the promises of future revenue and stock appreciation, are not actionable at all. *E.g.*, *Holland v. Thompson*, 338 S.W.3d 586, 596-97 (Tex. App. 2010) (expression of future monetary value not actionable representation of fact); *McCollum v. P/S Invs., Ltd.*, 764 S.W.2d 252, 255 (Tex. App. 1988) (future expressions of value generally non-actionable opinions, particularly where parties have comparative expertise).

In the light of these facts, Akerblom cannot plead, as fraudulent-inducement, what is in reality a contract claim. Further, although an adequately-pled fraud claim against one defendant may impute to a co-defendant "fair and adequate notice" of a civil-conspiracy claim, *Fisher*, 953 S.W.2d at 380, Akerblom's fraud claim against Lee fails because, as discussed, it is not adequately pled; consequently, his civil-conspiracy claim against Subsea also fails.

**b.**

Akerblom contends the district court, as part of its improper-joinder analysis, should have "pierced the pleadings" to consider his earlier-referenced affidavit, filed in support of his remand motion. It is rarely appropriate, however, to "pierce the pleadings", and then only when a *defendant* can point to undisputed facts that would preclude a plaintiff's recovery against it in state court. *E.g.*, *Smallwood*, 385 F.3d at 573; *Travis v. Irby*, 326 F.3d 644, 650 (5th Cir. 2003). Because Akerblom's state-court petition and federal-court amended complaint were insufficient on their face, this step was unnecessary; accordingly, the district court did not abuse its discretion in declining to do so.

In sum, despite the rule that doubts regarding the sufficiency of a plaintiff's pleadings are to be resolved in favor of remand when improper joinder is claimed, Defendants' heavy burden to establish such joinder, and the liberal

No. 12-20182

Texas pleading rules against which Akerblom's pleadings are measured, there is no reasonable basis on which to predict Akerblom's state-court recovery against Subsea. Therefore, pursuant to its ruling correctly that Subsea was improperly joined, the district court properly denied Akerblom's motion to remand.

### 2.

Because we affirm the district court's ruling in July 2011 that Subsea was improperly joined, review of the court's rulings in January 2012 that granted Subsea's Rule 12(b)(6) motion and denied Akerblom's motion for leave to amend is not necessary for our affirming the February 2012 judgment. Subsea is a non-diverse defendant; and, of course, complete diversity is a jurisdictional prerequisite to such review. Nevertheless, although it may have been preferable for the district court to have dismissed Subsea from this action in July 2011 under Federal Rule of Civil Procedure 21 (misjoinder of parties), its later ruling in January 2012 on Subsea's Rule 12(b)(6) motion presents no jurisdictional flaw. Once ruled improperly joined, and without any possibility for Akerblom to recover against it in this action, Subsea was effectively dismissed from this action in July 2011; in any event, complete diversity existed when judgment was entered in February 2012. *E.g.*, *Caterpillar v. Lewis*, 519 U.S. 61, 76-77 (1996) (lack of complete diversity not fatal to adjudication if complete diversity exists when judgment entered).

### B.

Next considered are the district court's, in January 2012: dismissing Holdings, Energy, and Offshore for lack of personal jurisdiction; and denying Akerblom's request for additional personal-jurisdiction discovery.

### 1.

A dismissal for lack of personal jurisdiction is reviewed *de novo*. *E.g.*, *Latshaw v. Johnston*, 167 F.3d 208, 210-11 (5th Cir. 1999). For this diversity

action, the district court may "exercise jurisdiction over only those defendants who are subject to the jurisdiction of courts of the state in which the [federal] court sits". *Point Landing, Inc. v. Omni Capital Int'l, Ltd.*, 795 F.2d 415, 419 (5th Cir. 1986). Because Texas' long-arm statute extends as far as the Fourteenth Amendment's Due Process Clause allows, "the personal jurisdiction question is actually a constitutional due process inquiry". *Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992) (citation omitted).

A plaintiff establishes constitutionally-permissible personal jurisdiction by showing, *inter alia*, a defendant has such "minimum contacts" with the forum State that "he should reasonably anticipate being haled into court there". *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980). A plaintiff can establish personal jurisdiction through either: "specific jurisdiction", when the action arises out of, or is related to, a defendant's specific contacts with the forum State, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); or "general jurisdiction", when a defendant has engaged in "continuous and systematic" contacts with the forum State and, therefore, expects fairly to be haled into court there for any reason, *id.* at 414-15 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 770, 779-80 (1984)).

Akerblom relies only on general jurisdiction. But, he cannot show any of these three Defendants engaged in "continuous and systematic" contact with Texas sufficient for general jurisdiction. Each is a foreign company with a foreign principal place of business. In *Helicopteros*, the Court held a foreign company's repeated transactional activity, coupled with occasional physical presence, was insufficient to support general jurisdiction. 466 U.S. at 418-19. Although Holdings, Energy, and Offshore have transacted business in Texas, these contacts are no greater than those in *Helicopteros*. Akerblom has not shown any additional contacts with Texas that could fairly be described as "continuous and systematic". His conclusory allegations cannot establish

No. 12-20182

general jurisdiction. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

## 2.

The district court denied Akerblom additional discovery on the personal-jurisdiction question because Akerblom's earlier briefing on whether Holdings had a Houston office was non-responsive. *Akerblom*, No. 4:11-CV-694, at *30-31 (25 Jan. 2012). Discovery rulings on matters related to personal jurisdiction are "reviewed for abuse of discretion and will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse". *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006) (internal quotation marks and citation omitted).

The court considered Akerblom's 17 exhibits and three affidavits, none of which provided a substantial basis for finding personal jurisdiction. Because no "unusual circumstances showing a clear abuse" of discretion are present, *see id.*, this additional-discovery claim fails.

## C.

In contesting Lee's dismissal for *forum non conveniens*, Akerblom maintains, *inter alia*, Singapore is neither an alternative nor an adequate forum. Lee, despite maintaining a residence in Texas and residing there occasionally, contends otherwise, noting also the Singaporean venue and choice-of-law clause contained in the agreements, which he asserts must be given effect.

"The doctrine of *forum non conveniens* proceed[s] from [the] premise [that] . . . [i]n rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum." *DTEX, LLC v. BBVA Bancomer*, 508 F.3d 785, 794 (5th Cir. 2007) (internal quotation marks and citation omitted; alterations in original). Dismissals for *forum non conveniens* are reversible only for clear abuse of discretion, and are accorded substantial deference so long as the court reasonably balanced the below-discussed factors. *Id.*

No. 12-20182

Such dismissal requires the initial determination that an alternative and adequate forum exists for adjudication of the parties' claims. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981). If it does, "the court must determine which forum is best suited to the litigation", a task accomplished through the balancing of private- and public-interest factors. *DTEX*, 508 F.3d at 794. The movant bears the burden of proof on all elements of the doctrine, *id.*; and a district court may "decline to exercise its jurisdiction" if both convenience and the interests of justice favor a foreign trial. *Karim v. Finch Shipping Co., Ltd.*, 265 F.3d 258, 268 (5th Cir. 2001).

An alternative forum exists "when the entire case and all parties can come within the jurisdiction of that forum". *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000) (citation omitted). And, the forum "is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court". *Id.*

Akerblom contends Singapore cannot qualify as an alternative and adequate forum because: Lee threatened to cancel his visa and cause his bankruptcy, rendering him unable to attend Singaporean proceedings; jury trials are not permitted there; and live testimony would be required as a result of Singaporean law's not permitting use of depositions.

In its well-reasoned opinion, the district court noted Lee submitted a declaration stating he is willing to accept service in the United States or Singapore, he voluntarily consented to Singapore's jurisdiction, and he waived jurisdictional defenses in that forum. *Akerblom*, No. 4:11-CV-00694, at * 6 (13 Feb. 2012). Consenting to a foreign court's jurisdiction renders that forum available for purposes of the doctrine of *forum non conveniens. In re Ford Motor Co.*, 591 F.3d 406, 412 (5th Cir. 2009). The court concluded discovery limitations and the lack of jury trial in a foreign forum do not render it inadequate.

15

No. 12-20182

*Akerblom*, No. 4:11-CV-00694, at \*7 (13 Feb. 2012) (citing *Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646, 659 (S.D. Tex. 2003)).  It also confirmed Singaporean courts would hear the claims within 18 months, compel the production of evidence, and not prejudice foreign litigants. *Id.* at \*8.  In the light of the court's thorough analysis, there was no abuse of discretion in its concluding Singapore is an alternative and adequate forum.

Therefore, next at issue is whether Singapore is the appropriate forum for the adjudication of the parties' claims.  For that decision, our court has outlined the requisite private- and public-interest factors to be considered:

> The "private interest" factors include: (i) the relative ease of access to sources of proof; (ii) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (iii) possibility of view of the premises, if view would be appropriate to the action; (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive . . . [including] enforceability of judgment; and whether the plaintiff has sought to "vex," "harass," or "oppress" the defendant.

> The "public interest" factors include: (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies resolved at home; (iii) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty.

*DTEX*, 508 F.3d at 794 (internal citations and alterations omitted).

The district court weighted the private-interest factors as neutral: Akerblom's witnesses would be required to travel to Singapore; but, the majority of the evidence was located there, as Lee's actions were on behalf of Singapore-based entities. *Akerblom*, No. 4:11-CV-00694, (13 Feb. 2012) at \*9.  The court

16

concluded that the public-interest factors militated in favor of dismissal, because a jury would be required to apply Singaporean law to an action in which Texas has little interest. *Id.* It further noted the action would burden the court's docket. The court considered the choice-of-law and venue clauses in the context of "an era of increasing international commerce", and concluded these bargained-for clauses trumped Akerblom's forum choice. *Id.* at \*9-10. (Although not mentioned by the court, Akerblom's undisputed Singaporean residency when the contracts were executed is relevant.) Because the district court considered the appropriate factors and balanced them reasonably, it did not clearly abuse its discretion in ruling on the private- and public-interest factors.

In sum, in the light of its rulings on the above-discussed factors to be considered, the dismissal of Lee under the doctrine of *forum non conveniens* was not a clear abuse of discretion. (As noted above, Lee's dismissal for *forum non conveniens*, of course, was conditioned on the court's retaining authority to reassert jurisdiction if: Lee fails to submit to the jurisdiction of Singaporean courts, asserts jurisdictional defenses there, or refuses service of process; or, if Akerblom is precluded from entering Singapore. *Id.* at \*10.)

### III.

For the foregoing reasons, and essentially for the reasons stated in the district court's three above-discussed opinions, the judgment is **AFFIRMED**.